## BIRKHILL v. TODD

1. TRIAL—MOTIONS—DIRECTED VERDICT—EVIDENCE.

   The trial judge is bound to interpret the testimony, and the legitimate inferences from the facts established, most favorably to plaintiff in passing on defendant's motion for a directed verdict at the conclusion of plaintiff's proofs.

2. NEGLIGENCE—AUTOMOBILES—PEDESTRIANS—DUTY.

   Before crossing a street, a pedestrian must (1) make proper observation as to approaching traffic, (2) observe approaching traffic and form a judgment as to its distance away and its speed, (3) continue his observations while crossing the street, and (4) exercise that degree of care and caution which an ordinary careful and prudent person would exercise under like circumstances.

3. NEGLIGENCE—AUTOMOBILES—DRIVERS—DUTY.

   Automobile drivers must notice persons in the street, must use reasonable and ordinary care not to run down pedestrians on the highway, must obey statutes governing the use of automobiles, and having ample space to pass a pedestrian on the highway, must so guide his vehicle as to avoid striking the pedestrian in passing.

4. AUTOMOBILES—LANE OF TRAFFIC—MOVEMENT—STATUTES.

   A vehicle shall be driven, as nearly as practical, entirely within a single lane on a roadway with two or more marked lanes

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 53 Am Jur, Trial § 347 et seq.
[2, 6, 7] 7 Am Jur 2d, Automobiles and Highway Traffic § 242 et seq.
[3] 7 Am Jur 2d, Automobiles and Highway Traffic §§ 207–209, 393 et seq.
[4] 7 Am Jur 2d, Automobiles and Highway Traffic § 219 et seq.
[5] 38 Am Jur, Negligence § 158 et seq.
[8–10] 29 Am Jur 2d, Evidence § 785 et seq.

and shall not be moved from that lane until the driver has first ascertained that such movement can be made with safety (MCLA § 257.642).

5. NEGLIGENCE—STATUTES—POLICE POWER—VIOLATION.
Violation of a statute imposed under the police power of the state is negligence *per se.*

6. NEGLIGENCE—AUTOMOBILES—PEDESTRIANS.
A pedestrian, while charged with the duty of exercising ordinary care while walking along a highway, has the right to assume that a driver of an automobile will not be negligent.

7. NEGLIGENCE—AUTOMOBILES—PEDESTRIANS—CROSSING ROAD.
A reasonable mind could conclude that a pedestrian crossing a road was not negligent in his belief that as long as he remained in a lane of traffic occupied by a line of stopped cars, he stood in a position of safety in relation to potential traffic travelling in the next lane, in view of the statute prohibiting a change of lane when the movement cannot be made with safety (MCLA § 257.642).

8. EVIDENCE—PHOTOGRAPHS—DISCRETION.
Introduction of photographs into evidence is a matter within the discretion of the trial judge.

9. EVIDENCE—PHOTOGRAPHS—ACTUAL CONDITIONS—AUTOMOBILES.
Trial judge did not abuse his discretion in concluding that photographs taken five years after the date of an automobile accident with variations in traffic and weather conditions did not present a faithful representation of the scene as it existed on the day of the accident, and refusing to allow them in evidence.

10. NEGLIGENCE—EVIDENCE—MENTAL DISTRESS.
A plaintiff must demonstrate by a preponderance of the evidence that his worry, anxiety, distress or apprehension about finances and about his wife at home are causally connected to an accident in order to recover damages for them.

Appeal from Wayne, Harry J. Dingeman, Jr., J. Submitted Division 1 November 4, 1969, at Detroit. (Docket No. 5,879.) Decided December 3, 1969.

Complaint by Ralph Birkhill against John Todd for damages resulting from a pedestrian-automobile

accident. Directed verdict for defendant. Plaintiff appeals. Reversed and remanded.

*Bernard J. Fieger,* for plaintiff.

*Plunkett, Cooney, Rutt & Peacock (Charles T. Mc-Gorisk,* of counsel), for defendant.

Before: Lesinski, C. J., and Holbrook and Quinn, JJ.

Lesinski, C. J. Plaintiff Ralph Birkhill brought action against defendant John Todd to recover damages allegedly caused when plaintiff was struck by an automobile driven by defendant while walking across a street. Following plaintiff's proofs, defendant moved for a directed verdict. The motion was granted and plaintiff appeals.

Following the well-settled rule that on a defendant's motion for a directed verdict the facts must be viewed most favorably for the plaintiff,[1] we set forth the facts. The incident out of which this case arose occurred on West Grand Boulevard between Second and Third Avenues in the city of Detroit. The boulevard consists of eight lanes, four eastbound and four westbound with the two directions separated by a traffic island. The lanes are marked by white painted strips and each lane is ten feet wide. The most northerly of the westbound lanes[2] is used for parking and the remaining three for traffic.

On March 16, 1963, a rainy day, plaintiff parked his car on the north side of the boulevard and walked eastward along the sidewalk until he was opposite

---

[1] *Pollock* v. *Farmers Mutual Fire Insurance Company* (1957), 349 Mich 12; *Lepley* v. *Bryant* (1953), 336 Mich 224.

[2] For convenience the parties numbered the westbound lanes from north to south beginning with the most northerly as number one. We adopt these designations for the purpose of this opinion.

a paved cross-over area on the traffic island. As he stood at this point he waited for a funeral cortege in the third lane to stop for a red traffic signal at Third Avenue. After it had come to a stop and the traffic in lane two had cleared, plaintiff walked at a normal gait between the parked cars in lane one, crossed lane two, which was empty, and between two cars in the funeral procession in lane three. He then stopped approximately a foot beyond the cortege and two or three feet away from the fourth lane.

Plaintiff made no observation of traffic in the fourth lane as he stood next to the cortege. Rather he watched the red traffic light at Third Avenue. He stood in this position for 30 to 40 seconds, then looked around to his left. As he glanced to the left he saw a "motion" and then was struck by defendant's car.

The trial judge concluded that plaintiff was contributorily negligent as a matter of law for standing in the third lane for 30 to 40 seconds without making an observation of the traffic in the fourth lane. Plaintiff appeals from the directed verdict.

The central issue raised on appeal is the propriety of the lower court's conclusion that plaintiff was guilty of contributory negligence as a matter of law.

The duty of a pedestrian in crossing a street was stated in *Malone* v. *Vining* (1946), 313 Mich 315, 321:

"Under present-day traffic conditions a pedestrian, before crossing a street or highway, must (1) make proper observation as to approaching traffic, (2) observe approaching traffic and form a judgment as to its distance away and its speed, (3) continue his observations while crossing the street or highway, and (4) exercise that degree of care and caution which an ordinarily careful and prudent person would exercise under like circumstances."

Paralleling these duties is the requirement that
automobile drivers must notice persons in the street,[3]
must use reasonable and ordinary care not to run
down pedestrians on the highway,[4] must obey stat-
utes governing the use of automobiles,[5] and as was
stated in *Schock* v. *Cooling* (1913), 175 Mich 313,
323:

"It is well settled by abundant authority that it is
negligence for the driver of a conveyance, having
ample space to pass a pedestrian on a highway, to
so guide his vehicle as to strike the latter in pass-
ing."

A number of cases are cited by defendant for the
proposition that plaintiff was negligent in not ob-
serving the traffic in the fourth lane. The authorities
cited, however, all involve a pedestrian walking into
the path of a moving vehicle without making the
necessary observation, rather than a vehicle shifting
lanes to strike a pedestrian standing in an adjacent
lane. In *Green* v. *Wallace* (1965), 376 Mich 113,
plaintiff "had crossed the 10-foot westerly lane *and
gone about 3 or 3–1/2 feet into the easterly lane*
before he again looked to the north and saw defend-
ant's car, for the first time, approaching him in the
easterly lane within 5 feet north from him, just an
instant before it struck him." (Emphasis supplied.)
*Shafkind* v. *Kroll* (1962), 367 Mich 42; *Conant* v.
*Bosworth* (1952), 332 Mich 51; and *Norwicki* v. *Sud-
deth* (1967), 7 Mich App 503, also involve movement
without continued observation.

Under the facts of this case plaintiff stood in the
lane occupied by the funeral cortege, which had
stopped for a traffic signal. As long as he remained
outside the fourth lane and made no attempt to enter

---

[3] *Thompson* v. *Christian* (1955), 342 Mich 463.
[4] *Pearce* v. *Rodell* (1937), 283 Mich 19.
[5] *Holmes* v. *Merson* (1938), 285 Mich 136.

it, reasonable minds might conclude that his concern should have been with the possibility that the funeral cortege might begin to move and the danger inherent in such movement. For as long as he remained in the third lane, his source of peril centered in the cars in that lane. Thus, it could be reasonably concluded that plaintiff's attention should have been, as it was, with the traffic light which controlled the movement of the cortege.

Moreover, a reasonable mind could conclude that plaintiff was not negligent in his belief that as long as he remained in a lane already occupied by a line of cars, he stood in a position of safety in relation to potential traffic in the fourth lane. MCLA § 257.642 (Stat Ann 1968 Rev § 9.2342), states in pertinent part:

"Whenever any roadway has been divided into 2 or more clearly marked lanes for traffic the following rules in addition to all others consistent herewith shall apply:

"(a) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety."

From the facts presented defendant of necessity had to have violated the statute in order to hit plaintiff. In *Holmes* v. *Merson* (1938), 285 Mich 136, the Court applied the statutory duties to drive on the right half of the highway and to control the car so as to be able to stop within an assured clear distance ahead in favor of pedestrians. There the Court held at p 140:

" 'While in some cases involving the statute the violation has been spoken of as "evidence of negligence," we think there has been no intention to depart from the rule that a violation of a statute

imposed under the police power of the State is neg-
ligence *per se.*' "

While a pedestrian is charged with the duty of ordi-
nary care, he has the right to assume that a driver
of an automobile will not be negligent. *Pearce* v.
*Rodell* (1937), 283 Mich 19.[6]

In *Wallace* v. *Kramer,* (1941), 296 Mich 680, plain-
tiff had come to a complete standstill, prior to cross-
ing the centerline of the road, to wait for the west-
bound traffic to clear, when a westbound car crossed
the centerline and hit him. The language of the
Court at p 689 is applicable to the instant case:

"It is further claimed that plaintiff was guilty of
contributory negligence. Plaintiff had a right to
cross the street in the center of the block notwith-
standing the fact that he knew it was a busy
thoroughfare and there was heavy traffic at the time.
He came to a standstill in a place of safety where he
and not the defendants had a right to be. It is
not a case of plaintiff walking into the pathway of
oncoming cars. He had reached a place of compara-
tive safety and stood still until he was struck down
through no fault of his own. He had as much right
upon the street as an automobile. * * * He was
not guilty of contributory ngeligence as a matter of
law." (Citations omitted.)

As we conclude that reasonable minds could differ,
we reverse and remand for a new trial. In reversing
we are not unmindful of Justice Black's admonition
in *Barron* v. *City of Detroit* (1957), 348 Mich 213,
217:

"In all negligence cases, brought here to review
grant or denial of motion for instructed verdict ad-
dressed to contributory negligence, we search the

---

[6] See, also, *Barron* v. *City of Detroit* (1957), 348 Mich 213, and
*Stillwell* v. *Grubaugh* (1959), 357 Mich 344, reversing *Morse* v.
*Bishop* (1951), 329 Mich 488, and holding that a pedestrian may
assume that automobiles will obey red traffic signals.

record to determine whether, as a matter of law, the plaintiff has failed to prove that he exercised ordinary care.  * * *  Our competence in such regard fades when arrayed against the comparably better experience and judgment of 12 citizens of the community who, literally, are 'on location.' Who knows best the degree of care most pedestrians—the great mass of mankind—habitually exercise at busy and signal-controlled Detroit intersections? Eight cloistered gentlemen of the law whose direct fact-knowledge must of necessity be derived from second-hand worth of printed pages, or a jury of Detroit housewives, clerks, wage earners and provincial citizens having regular occasion to use such intersections for motoring and pedestrian travel? I answer that in all but the rarest of cases the former are less apt to be rightly equipped to decide such an issue."[7]

Plaintiff also appeals adverse rulings by the trial court in two evidentiary matters. The first concerns several photographs of the accident scene which plaintiff sought to have admitted. The trial court refused admission on the grounds that the photographs were not faithful representations of the scene as it existed on the day of the accident.

The photographs were taken more than five years after the accident. They were taken on a sunny day although the accident took place on a rainy day when the road was wet and slick. The pictures did not have a long line of traffic in the third lane, as existed at the time of the accident due to the presence of the funeral cortege. Based on these differences the trial court denied admission.

The introduction of photographs is a matter of discretion with the trial judge.[8] Considering the

----

[7] See, also, *Stillwell* v. *Grubaugh, supra,* where Justice BLACK'S comment was noted with approval.

[8] See: *Amedeo* v. *Grand Rapids & I. R. Co.* (1921), 215 Mich 37, 55; *Rogers* v. *City of Detroit* (1939), 289 Mich 86, 90; *Pearce* v. *Rodell* (1937), 283 Mich 19, 28; *Perri* v. *Tassie* (1940),

five-year delay in taking the photographs and the variations in traffic and weather conditions (both points being highly relevant to the accident in question), we are unable to conclude that the trial judge abused his discretion in concluding that the photographs did not present a faithful representation of the scene as it existed on the day of the accident. *Kaminski* v. *Wayne County Road Commissioners* (1963), 370 Mich 389.

The second evidentiary issue appealed involves the attempt by plaintiff's counsel to bring out how plaintiff felt while he was in the hospital following the accident. Plaintiff established that there was an initial feeling of numbness, that this was replaced by "excruciating pain at all times, no matter what narcotics are administered," that there were feelings of uncertainty as to whether he would lose his leg, and that the leg had to be kept in a condition similar to traction. Testimony of plaintiff's physician was also admitted establishing the various medical and surgical operations taken in the course of treatment.

In the course of establishing the events at the hospital, plaintiff was asked: "Can you describe for us any worries you might have had during that period?" Following an objection by defendant and a colloquy among counsel and the court, plaintiff's attorney attempted to rephrase his question with the following result:

"*Q.* (*By Mr. Fieger*): Can you, in any other way, describe what your thoughts were concerning your condition?

"*A.* I was frightened and concerned about finances and my wife at home.

---

293 Mich 464, 471, 473; and *Eastman* v. *Ann Arbor R. Co.* (1966), 4 Mich App 540, 543.

"*Mr. McGorisk:*  Objection, your Honor. This isn't material or relevant.

"*The Court:*  The objection is sustained."

The only case cited by either party in both the trial court and this Court is *Stewart* v. *Rudner* (1957), 349 Mich 459. That case, however, does not have a factual setting analogous to that of the instant case. *Stewart* v. *Rudner* concerned the question of whether damages for mental anguish could be recovered for the breach of highly personalized, noncommercial contracts.

While *Stewart* v. *Rudner* is not factually relevant, we do take note of one general observation set forth by the Court therein. At p 467, after citing the traditional argument against recovery for mental anguish, the Court stated:

"These and similar objections to recovery for mental disturbance, applicable equally to tort and contract actions, have been so thoroughly demolished in recent years that we will not take the time for review. See Prosser, Law of Torts, (2d ed), § 37; 1 Harper and James, Law of Torts, ch 9, and cases and articles there cited. Although the law in this field is in a state of marked transition and fluidity, it is not too early to state that there is a marked trend towards recovery. There was a day, as we noted above, when the prevention of 'private warfare' fulfilled the highest function of the court, when a visibly cracked skull was a *sine qua non* for recovery, but the precedents of that era no longer control. We have come to realize, slowly it is true, that the law protects interests of personality, as well as the physical integrity of the person, and that emotional damage is just as real (and as compensable) as physical damage. See Goodrich, Emotional Disturbance as Legal Damage, 20 Mich L Rev 497."

In the instant case plaintiff attempted to prove the existence of what might be variously termed

worry, anxiety, distress or apprehension "about finances and my wife at home." In *Middlesex & B. St. Ry. Co.* v. *Egan* (CA1, 1914), 214 F 757, a similar question arose and the Court held at p 751:

"The evidence as to pain, anguish, and solicitude, occasioned Sweeney by the injury to his leg, *including apprehension of his inability to labor due to its probable loss*, was competent. His mental distress as to the effect of the accident upon his person was proximately caused by the alleged negligence of the defendant, and was a natural result reasonably to be apprehended under the circumstances. *Prescott* v. *Robinson* (1908), 74 NH 460 (69 A 522, 124 Am St Rep 987, 17 LRA [NS] 594); *Godeau* v. *Blood* (1880), 52 Vt 251 (36 Am Rep 751); *Sullivan* v. *Old Colony St. R. Co.* (1908), 197 Mass 512 (83 NE 1091, 125 Am St Rep 378); *McDermott* v. *Severe* (1906), 202 US 600, 611 (26 S Ct 709, 713; 50 L Ed 1162, 1169)." (Emphasis supplied.)

More recently, in *Atlanta & W. P. R. Co.* v. *Underwood* (1962), 218 Ga 193, 198 (126 SE2d 785, 789), the court stated "that evidence of plaintiff's mental distress caused by his inability to care for his invalid wife * * * was admissible to show an element of pain and suffering." Analogous to these cases are the great many cases recognizing "that anxiety or worry about a possible future disease or condition may constitute a proper element of damages, as a component of that mental anguish accompanying physical injury." Annotation: Damages—Anxiety—Future Conditions, 71 ALR2d 338, 341.

It is to be clearly understood, however, that as with all other elements of tort damages, the usual rules apply. Thus, on remand plaintiff will have to demonstrate by a preponderance of the evidence that the worries are causally connected to the accident. Moreover, no recovery should be allowed for

anxieties and worries about a completely fictitious, vague, fanciful or imagined consequence, having no reasonable basis. If plaintiff can meet this burden, however, he will have proven damage and will be entitled to recovery.

Reversed and remanded. No costs, neither party prevailing in full.

All concurred.