DENNIS v JAKEWAY

OPINION OF THE COURT

1. TRIAL—JURY QUESTIONS—EVIDENCE—CONFLICTING TESTIMONY—IN-
   FERENCES.

   It is error for a court to take a case from the jury where
   testimony is sharply conflicting, allowing reasonable minds to
   differ on the facts and inferences to be drawn therefrom.

2. APPEAL AND ERROR—DIRECTED VERDICT—FACTS.

   In reviewing a denial of a directed verdict in favor of a plaintiff,
   the facts are considered in the light most favorable to the
   defendant.

3. EVIDENCE—ADMISSIBILITY—PHOTOGRAPHS—COURTS—DISCRETION.

   The introduction into evidence of photographs simulating a previ-
   ously existing situation in an automobile accident case is a
   matter of discretion with the trial judge; the central test is
   whether the photographs present a reasonable or faithful re-
   production of the scene as it existed at the time of the accident.

4. EVIDENCE—ADMISSIBILITY—PHOTOGRAPHS—REPRODUCTION OF AC-
   TUAL CONDITIONS—COURTS—DISCRETION.

   It was not error for a trial judge to disallow photographs purport-
   ing to simulate conditions at the time of a collision where the
   vehicles used in the posed photographs were different from the
   type involved in the collision, the hood was not raised as at the
   time of the collision, there was no oncoming car pictured as
   alleged, and weather conditions were not the same.

5. AUTOMOBILES—NEGLIGENCE—SUDDEN EMERGENCY.

   One must be aware that he is confronted with a sudden peril in

REFERENCES FOR POINTS IN HEADNOTES

[1] 20 Am Jur 2d, Courts § 67.
[2] 5 Am Jur 2d, Appeal and Error §§ 110, 111, 547, 886.
[3] 30 Am Jur 2d, Evidence §§ 785–788.
[4, 7] 30 Am Jur 2d, Evidence §§ 793–796.
[5, 6] 8 Am Jur 2d, Automobiles and Highway Traffic §§ 359, 360,
    1030.

order to invoke the sudden emergency rule; the rule may be applied where, even though a defendant testified that he never saw the plaintiff's vehicle before he struck it, the defendant must have seen an object ahead and made a choice, since the record was clear that there were 18 feet 4 inches of skid marks left on the roadway by defendant's vehicle.

6. AUTOMOBILES—NEGLIGENCE—SUDDEN EMERGENCY—INSTRUCTIONS TO JURY.

An instruction on sudden emergency must be given where there is any evidence which would allow a jury to conclude that an emergency existed within the meaning of the doctrine; there was no abuse of discretion in giving an instruction on sudden emergency where there was sharp conflict in testimony and the trial judge's instructions were not that there was a sudden emergency but only "if you find that defendant was confronted with a sudden emergency not of his own making".

CONCURRENCE BY O'HARA, J.

7. EVIDENCE—ADMISSIBILITY—PHOTOGRAPHS—REPRESENTATION OF ACTUAL CONDITIONS.

*A trial judge decides as a matter of law whether proposed exhibits such as posed photographs faithfully depict conditions at the time of an accident with sufficient accuracy to warrant their admission into evidence; should the photographs meet this threshold criterion for admissibility, the judge* must *allow them to be submitted for consideration by the trier of fact.*

Appeal from Kent, Stuart Hoffius, J. Submitted Division 3 February 7, 1974, at Grand Rapids. (Docket No. 16536.) Decided April 30, 1974. Leave to appeal denied, 392 Mich —.

Complaint by Mary Dennis, administratrix of the estate of Richard McClellan, against Carroll Jakeway for wrongful death resulting from an automobile collision. Judgment for defendant. Plaintiff appeals. Affirmed.

*Dilley & Dilley,* for plaintiff.

*Norris & Keyser, P. C.,* for defendant.

Before: R. B. Burns, P. J., and Allen and O'Hara,* JJ.

Allen, J. Plaintiff, administratrix of the estate of Richard Lee McClellan, brought action for wrongful death resulting from a rear-end automobile collision. The jury returned a verdict of no cause of action. Plaintiff's motion for a new trial was denied and plaintiff appeals from the judgment and the order denying new trial.

The accident occurred about 7:10 p.m., January 15, 1972 on Lincoln Lake Avenue, a two-lane blacktop county road running north and south through northeast Kent County. The paved portion of this road is 22 feet wide and the lane for southbound traffic 10 feet, 10 inches wide. Snowplows had pushed a snowbank on the right side of the southbound lane six inches to a foot outside the pavement edge.

Earlier that evening, deceased was driving his 1966 Chevelle automobile south on Lincoln Road. He developed engine trouble and parked his car to the south of the roadway so that his right wheels were six inches off the edge of the pavement. He walked back to a gas station-grocery, phoned his parents' home and talked with Paul House who was a long-time family friend. House immediately drove his Pontiac to the gas station-grocery, picked up deceased and proceeded to the stalled automobile where he quickly repaired the engine but found the battery would not start the motor. House then drove further south, turned his car around and drove back, stopping his car on the west side of the southbound lane so that the two vehicles were nose to nose about four to six feet

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

apart. House proceeded to the rear of his own car and commenced removing jump cables from the trunk. At this moment the trunk lid and hood of deceased's Chevelle were open, the trunk lid of House's vehicle was open, the front lights of House's car were on and deceased was standing at the rear of his own vehicle which was blocking all but six inches of the southbound lane of traffic.

Defendant testified that at the same time, he was driving his 1969 Valiant southbound about 35 miles per hour. As he approached the stalled vehicle he met a car coming toward him from the north, dimmed his lights, applied his brakes and skidded 18 feet 4 inches, slamming into the rear of the Chevelle, crushing deceased and pushing deceased's car forward into the front of the House car. A specimen of defendant's blood taken about three hours after the accident was determined to have an alcohol content of 0.12% by weight.

Testimony submitted to the jury was sharply conflicting. Plaintiff's witnesses testified that defendant had some 900 feet unobstructed view of the road and should have seen the stalled vehicle sharply illuminated by the headlights of the House car, and that the northbound vehicle whose lights blinded defendant was "a phantom car". Based on this testimony, plaintiff claims the rear-end collision statute[1] and the assured clear distance ahead statute[2] make defendant guilty of negligence as a matter of law. Defendant's witnesses testified that deceased's vehicle was parked without taillights, blocking all of the southbound lane except for six inches, that visibility was obstructed by a small knoll, that the upraised hood and trunk of the Chevelle shut off light emanating from the House

---

[1] MCLA 257.402; MSA 9.2102

[2] MCLA 257.627; MSA 9.2327

headlamps, that visibility was further restricted by exhaust vapor from the House engine and the bright lights of a simultaneously appearing north-bound car. Defendant claims these facts created a sudden emergency which removed defendant from the assured clear distance ahead and rear-end collision rules.

Where testimony is sharply conflicting, allowing reasonable minds to differ on the facts and infer-ences to be drawn therefrom, it is error for a court to take the case from the jury.

"Only under the most extreme circumstances, those, in fact, where reasonable minds could not differ upon the facts, or the inferences to be drawn therefrom, can the case be taken from the jury. If honest differences of opinion between men of average intelligence might exist, the issue should not be resolved by the court alone." *McKinney v Yelavich,* 352 Mich 687, 692; 90 NW2d 883 (1958)

In reviewing a denial of a directed verdict in favor of plaintiff, the facts are considered in the light most favorable to defendant. *Lucas v Carson,* 38 Mich App 552, 556; 196 NW2d 819 (1972); *Grayson v Detroit,* 46 Mich App 152, 154; 207 NW2d 413 (1973).

Application of these rules clearly leads us to conclude that there was a surfeit of evidence for determination by the jury. Accordingly, we find no error in the trial court's refusal of plaintiff's mo-tion for a directed verdict. For similar reasons the jury verdict was not against the great weight of the evidence and plaintiff's motion for a new trial was properly denied.

Appellant raises two claims of error which de-serve further consideration.

1. *Did the trial court err in refusing to admit into evidence certain nighttime photographs?*

Posed daytime pictures taken some six weeks after the accident were allowed in evidence. Nighttime photographs taken 11 months after the collision, purporting to simulate what was visible to defendant as he approached the collision site, were disallowed. These photographs show the House car's headlights clearly visible 500 feet away and show the stalled automobile visible at least 150 feet distant. Material differences exist between the facts at the time of the accident and the facts presented in the excluded photographs. Deceased's vehicle was a 1966 Chevelle but the photographs show an El Camino pick-up type truck. At the time of the accident the Chevelle hood and trunk were raised, but in the exhibits the hood is not raised and there is no trunk on an El Camino. No oncoming northbound car appears in the photographs and weather and vapor conditions were not the same. Additionally, it is disputed whether the vehicles were parked in the same place on the road as at the time of the accident.

The introduction of the photographs simulating a previously existing situation is a matter of discretion with the trial judge. *Birkhill v Todd,* 20 Mich App 356, 363; 174 NW2d 56 (1969); *Kolcon v Smewing,* 28 Mich App 237, 242; 184 NW2d 244 (1970), *lv to app den,* 384 Mich 830 (1971). Where abuse of the trial court's discretion is claimed the central test is whether the photographs present a reasonable or faithful reproduction of the scene as it existed at the time of the accident. *Kaminski v Wayne County Road Commissioners,* 370 Mich 389, 395–399; 121 NW2d 830 (1963); *Birkhill v Todd, supra.* A raised hood and trunk lid could substantially reduce the visibility of the House vehicle lights. Headlights of a northbound vehicle would further alter the simulated view. We find no abuse

in the trial judge's discretion to disallow the exhibits.

2. *Did the trial court err in instructing the jury on the sudden emergency rule?*

Plaintiff contends the sudden emergency rule is not applicable because defendant's own testimony was that he never saw the McClellan vehicle. One must be aware he is confronted with a sudden peril to invoke the rule. *Anderson v Bliss,* 281 Mich 323, 327; 274 NW 809 (1937). Defendant must have seen an object ahead of him and made a choice since the record is clear that there were 18 feet and 4 inches of skid marks attributable to the Jakeway vehicle.

Plaintiff further asserts the rule is not applicable even if defendant were confronted with a sudden emergency because defendant helped create the situation by failing to observe what should have been clearly visible some 900 feet ahead. Again, we call attention to the sharp conflict in testimony on the question of visibility. We must determine the issue, viewing the conflict in evidence in the light most favorable to defendant:

> "The trial court instructed the jury that if they found that defendant driver was faced with a sudden emergency they could find him free of negligence. Plaintiffs claim error in the fact that the jury was instructed on the sudden emergency doctrine.
> "Viewing the testimony, as we must, in the light most favorable to defendant * * * ." *McKinney v Anderson,* 373 Mich 414, 419; 129 NW2d 851 (1964).

An instruction of sudden emergency is to be given whenever there is "any evidence which would allow a jury to conclude that an emergency existed within the meaning of that doctrine". *Wright v Marzolf,* 34 Mich App 612, 614; 192 NW2d 56 (1971). Given the sharp conflict in testimony and

the fact that the trial court's instructions were not that there was a sudden emergency but only "if you find that defendant was confronted with a sudden emergency not of his own making" we conclude the trial court did not abuse its discretion. Under the criteria laid down in *VanderLaan v Miedema,* 385 Mich 226, 231–232; 188 NW2d 564 (1971), a stalled automobile blocking a lane of traffic at night varies from the everyday traffic routine confronting the motorist and is "unusual". Viewing the testimony on the issue of visibility most favorable to defendant it is also "unexpected". The instant case is distinguishable from *Hughes v Polk,* 40 Mich App 634, 641–642; 199 NW2d 224 (1972), *lv to app den,* 388 Mich 770 (1972), where the court held icy conditions of a road in December were not "unusual" and not "unexpected" where it was stipulated that defendant driver had a clear view for 300 feet.

Finally, appellant contends the trial court erred in charging the jury on the statutory presumption of intoxication under 1967 PA 253 as amended, MCLA 257.625a(1)(a–c); MSA 9.2325(1)(1)(a–c). This claim was not pursued on oral argument. The instruction was more damaging to defendant than to plaintiff, and plaintiff did not object to the instruction at the time of trial as required by GCR 1963, 516.2. Whatever error that may have existed was corrected by the jury verdict. Accordingly, it is not necessary to determine the issue of whether the statutory presumption extends to civil actions.

Affirmed, costs to appellee.

R. B. BURNS, P. J., concurred.

O'HARA, J. *(concurring in result).* I concur with the majority opinion which affirms the jury verdict of no cause of action in favor of defendant.

I write separately solely because of my disagreement with the statement that "introduction of * * * photographs simulating a previously existing situation is a matter of discretion with the trial judge".

While there is ample case authority which stands for that particular proposition, I am, nonetheless, pursuaded that the rule may be more precisely and accurately stated. My understanding is that the trial judge decides as a matter of law whether proposed exhibits, such as the posed photographs herein, faithfully depict conditions at the time of the accident with sufficient accuracy to warrant their admission in evidence. Should the evidence meet this threshold criterion for admissibility, as interpreted by relevant case authority, the trial judge *must* allow the involved photographs to be submitted for consideration by the trier of fact. There is no discretion on the part of the trial judge.[1] Either the photographs are admissible as a matter of law or they are not admissible on specific legal grounds. Hence, the test is not whether the trial judge abused his discretion in denying plaintiff the right to introduce the posed photographs. The crucial inquiry is instead whether the trial judge erred as a matter of law in holding that the proffered exhibits were not accurate representations of conditions the night of the automobile collision. I must answer that question in the negative. I too agree that the lower court properly denied admission of the proposed exhibits. It was not shown by plaintiff, as mandated by *Kaminski v Wayne County Road Commissioners,* 370 Mich 389; 121 NW2d 830 (1963), that the

---

[1] I am not unmindful of the fact that a trial judge may properly under certain circumstances exclude otherwise admissible evidence because its probative value may be outweighed by possible prejudice resulting from admission of particular photographs.

involved photographs substantially depicted condi-
tions as they existed when the decedent's death
occurred.

I vote to affirm and award costs to the appellee.