*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TODD BRIGGS, Personal Representative of the
Estate of OMARI BELL,

       Plaintiff-Appellee,

v

JEFFREY KNAPP,

       Defendant-Appellant,

and

GABRIEL CARMONA and ADRIAN ROJO,

       Defendants.

UNPUBLISHED
March 9, 2023

No. 358641
Kalamazoo Circuit Court
LC No. 2020-000143-NI

Before: GLEICHER, C.J., and K. F. KELLY and LETICA, JJ.

PER CURIAM.

Defendant, Jeffrey Knapp, appeals by leave granted[1] the order denying defendant's motion for summary disposition in favor of plaintiff, Todd Briggs, the personal representative of the Estate of Omari Bell (the decedent). We affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

Defendant was driving on the freeway when his vehicle collided with the decedent, a pedestrian. The decedent was tossed over the roof of defendant's vehicle and landed on the freeway where he was run over by a vehicle driven by defendant Gabriel Carmona and registered

---

[1] *Estate of Omari Bell v Knapp*, unpublished order of the Court of Appeals, entered February 7, 2022 (Docket No. 358641).

-1-

to defendant Adrian Rojo.[2] Plaintiff filed an action against defendant alleging ordinary negligence citing common-law breach of duties by the driver and statutory motor vehicle violations.

Defendant denied responsibility for the accident. After it occurred, he pulled over to the side of the road. He was given sobriety tests, and the police concluded he was sober at the time of the accident.[3] Defendant testified that he was driving in the right lane with his cruise control set at approximately 70 miles per hour (mph) in accordance with his practice. He never saw the decedent until the impact occurred. Defendant testified that he was looking ahead at the roadway and was not distracted. He had his cellphone attached to the car's heater vent and denied making calls or texts at the time of the collision. Defendant denied seeing the decedent before the impact. He opined that he was driving in the center of the right lane, and the decedent entered the right lane of travel as evidenced by the damage to his vehicle at the passenger side. Defendant denied that he could have avoided the accident. He cited to the dark conditions, the all dark clothing worn by the decedent, and the lack of ambient lighting because of a nearby wall. The police interviewed defendant and found him to be forthcoming. The accident reconstructionist and the investigating officer concluded that the decedent was at fault for the accident, analogizing the vehicle/pedestrian accident to a vehicle/deer accident. Defendant was not ticketed for the accident.

Defendant moved for summary disposition under MCR 2.116(C)(10), relying on his deposition testimony and the results of the police investigation. It was also asserted that the decedent tested positive for controlled substances and may have been more than 50% at fault for the accident under the circumstances. Additionally, defendant questioned the foundation for the opinion expressed by Timothy Robbins, plaintiff's expert, and that defendant could not be held negligent in light of the sudden emergency doctrine.

Plaintiff opposed the dispositive motion. Plaintiff noted that, before the accident, two motorists called 911 to report that a pedestrian was on the freeway or near the freeway off of westbound I-94. Although the decedent was wearing all dark clothing, he was visible to these individuals. Plaintiff cited to the duty owed by a driver to pedestrians at common-law and by statute and noted that the issue of breach of duty and causation generally presented an issue for the trier of fact. Additionally, it was noted that summary disposition was inappropriate when credibility issues were presented. Plaintiff also relied on the affidavit filed by Robbins which cited to the ability of other drivers to see the decedent on the roadway as well as vehicle and lighting factors, such as cleaning dim headlights or using bright headlights, that defendant could have taken. The trial court denied defendant's motion for summary disposition, concluding that there

---

[2] The trial court granted summary disposition in favor of Carmona and Rojo, and that decision is not at issue in this appeal.

[3] Defendant reported that he was driving home from a night class and did not consume alcohol or controlled substances.

were genuine issues of material fact particularly when two other drivers were able to observe the decedent.[4] We granted defendant's application for leave to appeal.

## II. STANDARD OF REVIEW

A trial court's ruling on a motion for summary disposition is reviewed de novo. *Houston v Mint Group, LLC*, 335 Mich App 545, 557; 968 NW2d 9 (2021). Summary disposition is appropriate pursuant to MCR 2.116(C)(10) where there is "no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). When reviewing a motion for summary disposition challenged under MCR 2.116(C)(10), the court considers the affidavits, pleadings, depositions, admissions, and other admissible documentary evidence then filed in the action or submitted by the parties in the light most favorable to the nonmoving party. MCR 2.116(G)(4), (G)(5); *Buhl v City of Oak Park*, 507 Mich 236, 242; 968 NW2d 348 (2021).

## III. ANALYSIS

Defendant asserts that the trial court erred in concluding that there were genuine issues of material fact when the decedent was dressed in dark clothing, there was a lack of lighting in the area, and defendant could not have avoided the accident. We disagree.

## A. LEGAL PRINCIPLES

To establish a prima facie case of negligence, a plaintiff must generally demonstrate: "(1) a duty owed by the defendant to the plaintiff, (2) breach of that duty by the defendant, (3) damages suffered by the plaintiff, and (4) that the damages were caused by the defendant's breach of duty." *Composto v Albrecht*, 328 Mich App 496, 499; 938 NW2d 755 (2019). Generally, whether a defendant owes a duty of care to a plaintiff presents a question of law for the court to determine. *Hill v Sears, Roebuck & Co*, 492 Mich 651, 659; 822 NW2d 190 (2012); *Sabbagh v Hamilton Psychological Servs, PLC*, 329 Mich App 324, 348-349; 941 NW2d 685 (2019). "Duty is the legal obligation to conform one's conduct to a particular standard to avoid subjecting others to an unreasonable risk of harm." *Composto*, 328 Mich App at 499 (citation omitted). This duty, typically described as an ordinary negligence standard of care, requires that a defendant exercise ordinary care to a plaintiff in light of the circumstances. *Id*. at 499-500.

---

[4] Defendant also moved for reconsideration and presented documentary evidence, specifically, an affidavit, not previously filed with the trial court. The trial court denied reconsideration and there was no indication that it considered this newly filed evidence. The order denying reconsideration is not the order appealed from in this appeal. The decision to deny reconsideration was within the trial court's discretion as well as the failure to consider newly filed evidence. See *Pioneer State Mut Ins Co v Michalek*, 330 Mich App 138, 150; 946 NW2d 812 (2019); see also *Charbeneau v Wayne Co Gen Hosp*, 158 Mich App 730, 733; 405 NW2d 151 (1987) ("We find no abuse of discretion in denying a motion [for rehearing or reconsideration] resting on a legal theory and facts which could have been pled or argued prior to the trial court's original order.").

"Duty is essentially a question of whether the relationship between the actor and the injured person gives rise to any legal obligation on the actor's part for the benefit of the injured person." *Brown v Brown*, 478 Mich 545, 552; 739 NW2d 313 (2007). To determine whether a duty exists, the court may consider factors such as the foreseeability of the harm, the degree of certainty of injury, the close connection between the conduct and the injury, any moral blame correlated to the conduct, the policy of preventing future harm, and the burdens and consequences of imposing a duty and liability for a breach. *Id*. at 553 (citation omitted).

In *Malone v Vining*, 313 Mich 315, 321; 21 NW2d 144 (1946), our Supreme Court delineated the following obligations or duty owed by a pedestrian:

> Under present-day traffic conditions a pedestrian, before crossing a street or highway, must (1) make proper observation as to approaching traffic, (2) observe approaching traffic and form a judgment as to its distance away and its speed, (3) continue his observations while crossing the street or highway, and (4) exercise that degree of care and caution which an ordinarily careful and prudent person would exercise under like circumstances. In *Pearce v Rodell*, 283 Mich 19, 37[; 276 NW 883 (1937)], we approved the following charge by the trial court:
>
> "Pedestrians upon the public highway have a right to assume in the first instance the driver of an automobile will use ordinary care and caution for the protection of pedestrians, nevertheless the pedestrian must not rest content on such assumption, if there comes a time where he knows, or ought to know by the exercise of reasonable care, he is being placed in danger. He must take such care for his own safety as a reasonable, careful, prudent person would do under similar circumstances."
>
> "We have repeatedly held that one must look before entering a place of possible danger, such as crossing an intersection, and maintain observation while crossing." *Carey v De Rose*, 286 Mich 321, 323[; 282 NW 165 (1938)].
>
> "If one is to make a proper observation of an oncoming car, * * * the observation must include not only the distance the approaching car is from the point of possible collision but also some observation and judgment of its approximate speed." *Ayers v Andary*, 301 Mich 418, 425[; 3 NW2d 328 (1942)].

A driver also owes duties to pedestrians. Specifically, "automobile drivers must notice persons in the street, must use reasonable and ordinary care not to run down pedestrians on the highway, [and] must obey statutes governing the use of automobiles[.]" *Birkhill v Todd*, 20 Mich App 356, 360; 174 NW2d 56 (1969). Additionally, it is negligence for the driver with ample space to pass a pedestrian on a highway to guide his vehicle and strike the pedestrian in passing. *Id*.

Once the duty element of a negligence action is established, the breach of duty requirement must be examined. The trier of fact then decides, whether, in light of the particular facts of the case, a breach of the duty occurred. *Meyers v Rieck*, ___ Mich ___, ___; ___ NW2d ___ (2022) (Docket No. 162094), slip op at 9. Thus, the fact-finder renders a determination regarding what constitutes reasonable care under the circumstances. *Id*.; see also *Riddle v McLouth Steel Products*

-4-

*Corp*, 440 Mich 85, 96; 485 NW2d 676 (1992) ("Once a defendant's legal duty is established, the reasonableness of the defendant's conduct under that standard is generally a question for the jury. The jury must decide whether the defendant breached the legal duty owed to the plaintiff, that the defendant's breach was the proximate cause of the plaintiff's injuries, and thus, that the defendant is negligent." (Citation omitted.)).

Comparative negligence is the standard adopted in Michigan to promulgate a fair system of apportionment of damages. *Id*. at 98. "Under this doctrine, a defendant may present evidence of a plaintiff's negligence in order to reduce liability." *Id*. Comparative negligence is an affirmative defense. *Id*. Questions regarding the reasonableness of a decedent's actions are relevant to comparative negligence, not duty. *In re Skidmore Estate*, 500 Mich 967; 892 NW2d 376 (2017).[5]

The moving party has the initial burden to support its claim for summary disposition with affidavits, depositions, admissions, or other documentary evidence. *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996); *McCoig Materials, LLC v Galui Constr, Inc*, 295 Mich App 684, 693; 818 NW2d 410 (2012). "When a moving party properly supports its motion, the burden shifts to the nonmoving party to establish that a genuine issue of disputed material fact exists." *Sabbagh*, 329 Mich App at 346. The nonmoving party may not simply rely on allegations or denials in the pleadings. *McCoig Materials, LLC*, 295 Mich App at 693. "Affidavits, depositions, and documentary evidence offered in support of, and in opposition to, the motion are considered only to the extent that the content or substance would be admissible as evidence." *Id*.

"A trial court may not assess credibility, weigh the evidence, or resolve factual disputes, and when material evidence conflicts, it is not appropriate for the court to grant the motion for summary disposition." *Cetera v Mileto*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 356868), slip op at 3. Like the trial court, the appellate court's review of a summary disposition decision makes all legitimate inferences in favor of the nonmoving party. *Id*.

## B. APPLICATION OF LAW TO THE FACTS

The trial court did not err in denying defendant's motion for summary disposition in light of the documentary evidence submitted by the parties.

To establish a prima facie case of negligence, a plaintiff must generally demonstrate: "(1) a duty owed by the defendant to the plaintiff, (2) breach of that duty by the defendant, (3) damages suffered by the plaintiff, and (4) that the damages were caused by the defendant's breach of duty." *Composto*, 328 Mich App at 499. Whether a defendant owes a duty of care to a plaintiff presents a question of law for the court to determine. *Hill*, 492 Mich at 659. "Duty is the legal obligation

---

[5] Although the citation is to an order from our Supreme Court, it nonetheless constitutes binding precedent. *Dykes v William Beaumont Hosp*, 246 Mich App 471, 483; 633 NW2d 440 (2001). ("An order that is a final Supreme Court disposition of an application and that contains a concise statement of the applicable facts and reasons for the decision is binding precedent."). See also *Evans & Luptak, PLC v Lizza*, 251 Mich App 187, 196; 650 NW2d 364 (2002) (An order from our Supreme Court constitutes binding precedent when its rationale can be understood).

to conform one's conduct to a particular standard to avoid subjecting others to an unreasonable risk of harm." *Composto*, 328 Mich App at 499 (citation omitted).

With regard to the question of duty, defendant as the driver owed a duty "to notice persons in the street, must use reasonable and ordinary care not to run down pedestrians on the highway, [and] must obey statutes governing the use of automobiles[.]" *Birkhill*, 20 Mich App at 360. Additionally, defendant was negligent as a driver if he had ample space to pass the decedent on the highway and avoid striking the decedent when passing. *Id*.

In the present case, defendant seemingly asserted that he satisfied his duty and did not commit any breach. Defendant alleged that he was not using his phone to call or text when the collision occurred. Rather, his cellular phone was in a magnetic dock station that was clipped to the heater vent. His phone was turned on and Google maps was "up for the route home." Defendant did not consume any drugs or alcohol before the crash. He could not remember the lighting, any parked vehicles, or any cars immediately in front of him before the accident. When asked where his eyes were looking before the crash, defendant answered, "I don't remember exactly, but as a matter of general driving I'm looking down the roadway and scanning for cars and hazards." Defendant could not recall his speed, but testified that he generally set his cruise control near the speed limit of 70 mph. When asked to describe what happened, defendant answered, "I mean there's not a whole lot there. I was driving on the highway and all of a sudden there was an impact to the vehicle and I tried to pull over on the side of the road." Immediately before the impact, defendant asserted that he was traveling within his lane. When asked when defendant first realized a crash was going to occur, he answered, "I never realized it was going to occur. It occurred." Defendant was asked if he observed the decedent before the crash. He responded, "Yeah, I didn't see anything before the crash that was moving around there, no." There was an inquiry if the decedent made any effort to avoid the collision. Defendant answered, "No, I couldn't – I wouldn't have seen him, I didn't see anything, so no, couldn't." And, defendant did not know what type of clothing the decedent was wearing. When asked about his ability to discern what direction the decedent was traveling on the roadway immediately before the crash, defendant testified, "I never saw the man, so no."

Defendant contends that this evidence is "undisputed," and therefore, summary disposition in his favor was proper. However, once the duty element of a negligence action is established, the breach of duty requirement must be examined. The trier of fact then decides, whether, in light of the particular facts of the case, a breach of the duty occurred. *Meyers*, ___ Mich at ___. Thus, the fact-finder renders a determination regarding what constitutes reasonable care under the circumstances. *Id*.; see also *Riddle*, 440 Mich at 96. And, "[a] trial court may not assess credibility, weigh the evidence, or resolve factual disputes, and when material evidence conflicts, it is not appropriate for the court to grant the motion for summary disposition." *Cetera v Mileto*, ___ Mich App at ___.

In the present case, at common-law, defendant had a duty to look out for pedestrians such as the decedent. Because this duty was established, the trier of fact was required to determine if defendant breached the duty of reasonable care owed under the circumstances. Although the decedent had passed and could not dispute defendant's testimony, the testimony offered by defendant was still subject to a credibility determination. It was certainly curious that two other individuals described a person in all black clothing walking on or near the shoulder of the freeway

and called 911 to express their concerns. The decedent was visible to these two individuals. Yet, defendant testified that he never saw the decedent, and the first sight of the decedent was when the contact occurred. Whether defendant was looking at the roadway, as he testified, or was distracted by his phone, tiredness, or some other factor presented a credibility determination for the trier of fact.

Nonetheless, defendant submits that the decedent as a pedestrian also was subject to duties and cited to the fact that the decedent was walking on the freeway, wearing dark clothing, was in a dark area, and was intoxicated. Indeed, a pedestrian "must (1) make proper observation as to approaching traffic, (2) observe approaching traffic and form a judgment as to its distance away and its speed, (3) continue his observations while crossing the street or highway, and (4) exercise that degree of care and caution which an ordinarily careful and prudent person would exercise under like circumstances." *Malone*, 313 Mich at 321.

Defendant submitted that the decedent chose to go to the area at night to work on his car. However, the documentary evidence indicated that the decedent was experiencing mental health issues and had police contacts.[6] It is entirely possible that he sought to fix his vehicle to leave the area in light of the police contacts and family drama that had transpired. In any event, the decedent's chosen time to attend to his vehicle and his attire did not alleviate the duty owed by defendant. Rather, the decedent's actions pertain to comparative negligence. As noted, comparative negligence is the standard adopted in Michigan to promulgate a fair system of apportionment of damages. *Riddle*, 440 Mich at 98. "Under this doctrine, a defendant may present evidence of a plaintiff's negligence in order to reduce liability." *Id*. Comparative negligence is an affirmative defense. *Id*. Questions regarding the reasonableness of a decedent's actions are relevant to comparative negligence, not duty. *In re Skidmore Estate*, 500 Mich at 967. Additionally, defendant's proffer that the decedent is more than 50% at fault for the accident because of his intoxication was not established by the toxicology report. The medical examiner did not opine that the decedent was impaired at the time of the accident, and the toxicology report did not positively detect any compounds, contrary to Officer Lena Wileczek's testimony. Thus, MCL 600.2955a(1)[7] did not serve as a basis to dismiss plaintiff's complaint.

---

[6] Although it was alleged that the decedent was arrested and released from jail, the police deposition testimony did not disclose the charges. The investigator for the medical examiner indicated that police contacts were because of the decedent's mental health issues. The decedent's sister, Jamila Bell, also indicated that the decedent suffered from post-traumatic stress disorder, had a conflict with family, and was prohibited from staying with relatives in Kalamazoo. She indicated that the decedent was at the freeway to find his vehicle that had stalled there.

[7] MCL 600.2955a(1) provides: "It is an absolute defense in an action for the death of an individual or for injury to a person or property that the individual upon whose death or injury the action is based had an impaired ability to function due to the influence of intoxicating liquor or a controlled substance, and as a result of that impaired ability, the individual was 50% or more the cause of the accident or event that resulted in the death or injury. If the individual described in this subsection was less than 50% the cause of the accident or event, an award of damages shall be reduced by that percentage."

Lastly, defendant's reliance on the sudden emergency doctrine is misplaced. The sudden emergency doctrine applies when "a collision is shown to have occurred as the result of a sudden emergency not of the defendants' own making." *Taylor v White Distrib Co*, 482 Mich 136, 139-140; 753 NW2d 591 (2008) (citation omitted). The sudden emergency doctrine is utilized to rebut a statutory presumption of negligence, but to do so, it must be totally unexpected. *Id*. "The sudden emergency doctrine provides a basis for a defendant to be excused of a statutory violation in regards to the events that occur after the defendant discovers the emergency." *Freed v Salas*, 286 Mich App 300, 333; 780 NW2d 844 (2009).

In the present case, plaintiff raised both common-law and statutory violations. Further, defendant testified that he never saw the decedent, and he became aware of the decedent when the accident occurred. He did not take evasive action before or after the accident but was forced to pull over because of the condition of his vehicle. Moreover, the application of the doctrine is contingent on a sudden emergency that occurs not as a result of defendant's "own making." If defendant was distracted and not paying attention to the roadway, an issue that presents a credibility determination, then a sudden emergency not of the defendant's own making failed to transpire. Under the circumstances, defendant failed to demonstrate entitlement to summary disposition in light of this doctrine.

Finally, defendant seemingly submits that all of the police officers testified that the decedent caused the accident, and indeed, no hazard was issued to defendant or Carmona. However, there was no documentary evidence to support the driving conditions that evening.[8] That is, both vehicles that struck the decedent did not have data collection boxes to track their speed and any braking. Neither vehicle had a dashcam. Although defendant asserts that the area of the collision was dark and lacked ambient lighting, he did not present video evidence of the lighting in the area of the collision as opposed to the two locations where the pedestrian, presumed to be the decedent, was viewed on the highway. The investigating police officers accepted that defendant was driving 70 mph and paying attention to the roadway.[9] They did not have an independent basis to verify his assertions but nonetheless found him to be credible. They similarly

---

[8] Although defendant contends that plaintiff did not meet his burden to oppose summary disposition, the moving party must first make and support his motion to shift the burden. The two witnesses who called 911 were not deposed, and the police officers testified to their conversations with them after the accident. There is no indication that plaintiff's expert interviewed those witnesses, ascertained the location where they saw the decedent, and compared the lighting in those areas to the lighting where the accident occurred. Therefore, the exact disparity in the lighting cannot be ascertained on this record.

[9] Additionally, Michigan State Police Sergeant Brandon Davis testified that police officers were sent to look for the decedent after the 911 calls and could not locate him. However, Officer Kevin Burleson testified that he received the report about the pedestrian and went to look for him but then engaged in a traffic stop. Officer Burleson was about to look for the pedestrian in the opposite direction when he learned of the accident. The number of officers and the degree of the search was not delineated, and Davis's characterization of a thorough police search is questionable.

likened the decedent's actions to a deer jumping in front of a vehicle. The officers' determination that defendant was credible did not remove the issue from the jury.[10]

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Anica Letica

---

[10] In the trial court, defendant challenged the Robbins's opinion for a lack of foundation. For the first time on appeal, he contends that the Robbins's affidavit does not satisfy MRE 702, MRE 703, and MCL 600.2955. Because this issue was not raised below and not delineated in the statement of questions presented, we decline to address it. MCR 7.212(C)(5); *Mich Farm Bureau v Dep't of Environmental Quality*, 292 Mich App 106, 146; 807 NW2d 866 (2011); *Cheron, Inc v Don Jones, Inc*, 244 Mich App 212, 218 n 3; 625 NW2d 93 (2000).