WAVLE *v.* MICHIGAN UNITED RAILWAYS CO.

1. APPEAL AND ERROR—BRIEFS—STATEMENT OF FACTS.
   Appellant's brief, on error, should contain a statement of the errors on which he relies, the questions involved, and the manner in which they are raised.

2. NEGLIGENCE — CONTRIBUTORY NEGLIGENCE — ELECTRIC AND SUBURBAN RAILWAYS—CROSSINGS.
   Decedent was not, as matter of law, guilty of contributory negligence for failing to see an interurban car approaching in the dark without a headlight and without blowing the whistle, as he started to cross defendant's track at a private crossing.

3. RAILROADS—OPERATION—WHISTLE—STATUTES.
   While an electric interurban railroad is not required by statute to give signals at highway or other crossings, failure to display a light or to give signals at night, is negligence.

4. SAME—STREET RAILWAYS—ELECTRIC AND INTERURBAN LINES —CROSSINGS.
   But no negligence is chargeable for not blowing the whistle at a private crossing.

5. SAME—CONTRIBUTORY NEGLIGENCE.
   Before crossing the track of an interurban railway, pedestrians are required, in the exercise of reasonable prudence, to stop and listen, as in the case of railroad tracks.[1]

6. SAME.
   Even in a case where the custom of blowing its whistle for a public crossing several rods distant from a private right of way across defendant's tracks was known in the community, there was no violation of duty to one using the private crossing for failing to sound the whistle at the public highway.

7. TRIAL—PROCEEDINGS IN ABSENCE OF JURY.
   Prejudice to defendant from permitting a stenographer to read, for the information of counsel for plaintiff, in the absence of the jury, notes taken at the coroner's inquest, was not made out.

---

[1] Duty to look and listen before crossing the tracks of an electric road, see note in 15 L. R. A. (N. S.) 254.

8. SAME—SPECIAL QUESTIONS—JURY.

It was not error, after submitting to the jury a special question on which the jurors were unable to agree, and which was not conclusive of any issue in the case, to withdraw the question from their consideration.

9. DAMAGES—ESTATES OF DECEDENTS—DEATH.

Where decedent, a man of 72 years of age, a farmer, was killed by the negligent act of defendant, and the testimony showed that he did not work his farm, but leased it on shares, receiving two-thirds of the proceeds, his wife could only recover the damages which she had sustained by reason of contributions which she might expect to lose as the result of his death; but such damages would not be diminished by the fact that the widow might be able to support herself.

10. RAILROADS—PRIVATE CROSSINGS—EASEMENTS.

Owners of private crossings are not required, at all times and under all circumstances, to protect themselves from injury at the hands of a railroad company operating an electric line across them.

Error to Ingham; Collingwood, J. Submitted January 19, 1912. (Docket No. 131.) Decided May 5, 1912.

Case by Martha V. Wavle, administratrix of the estate of Charles Wavle, deceased, against the Michigan United Railways Company for the unlawful killing of decedent. Judgment for plaintiff. Defendant brings error. Reversed.

*Sanford W. Ladd* (*Warren, Cady & Ladd*, of counsel), for appellant.

*Frank L. Dodge* and *A. A. Bergman*, for appellee.

PER CURIAM. Upon the record of some 422 pages, 145 errors are assigned, 71 of which are based upon the refusal of the court to instruct the jury as requested to do by defendant. Seventeen are based upon the charge as given, and are in form, "The court erred in charging the jury in the language contained in the first subdivision of the court's charge," and so on, giving the number of a subdivision into which the charge is divided in the record.

Rulings admitting and rejecting testimony are made the basis of 47 assignments of error; and errors are assigned upon various other rulings, including the refusal to direct a verdict for defendant. Rule 40 of this court requires that—

"The brief of a party bringing a cause into this court shall contain a clear and concise statement of the facts of the case, distinct from argument, and of the errors upon which he relies, the questions involved, and the manner in which they are raised. The court will consider such statement sufficient and accurate unless the opposite party shall point out in his brief wherein the statement is insufficient or inaccurate."

The brief for appellant does not comply with the rule, and in itself contains little evidence that a compliance with the rule was attempted. Instead of a narration of undisputed, material facts, if there were any such, and, as to disputed facts, a statement of what the testimony produced by plaintiff and that produced by defendant tended to show, the 15 pages of matter headed "Statement of facts" is made up largely of quotations from and statements of the effect of the testimony of certain witnesses, accompanied by argument. We come to the portion of the brief headed "Argument" without any statement or knowledge of the questions involved, or the manner in which they were raised, beyond this: It is said that plaintiff claims that on the particular occasion the servants of defendant did not, as they had theretofore customarily done, blow a whistle at a public crossing or sound a gong, and that the headlight on the car was not burning. It appears, also, from a reading of the statement that, concerning the facts so claimed by plaintiff to be true, there was a dispute. No question reviewable upon error is stated or referred to. Under the head "Argument" and subdivision "Contributory Negligence," it is said that, "under this subdivision, the defendant relies upon the following assignments of error: 2, 13, 34, 35, 37, 38, 39, 40, 48, 49, 53, 79, 80, 141, 142." None of these are again

referred to; but the argument proceeds with the statement that "a verdict should have been directed at the close of the proofs in this case for the defendant."

Turning, as we are obliged to do, to the record, we discover, first, that the assignments referred to are based upon refusals of the court to instruct the jury as requested, and upon portions of the charge which were given. Turning to the requests to charge, we find that the second assignment of error is based upon the refusal of the court to say to the jury that plaintiff's intestate was, under the evidence, guilty of contributory negligence prohibiting a recovery. The thirteenth assignment of error is based upon an alleged refusal to charge that it was the duty of plaintiff's intestate to stop, look, and listen before entering upon the track, and that his failure to do so was contributory negligence; "and, if you find he failed so to do, then your verdict must be for the defendant, no cause of action."

The thirty-fourth is, in substance and effect, a repetition of the thirteenth request to charge. The thirty-fifth, thirty-seventh, thirty-eighth, fortieth, forty-eighth, forty-ninth, fifty-third, and one hundred forty-second assignments are not essentially different from the thirteenth. Turning to the charge of the court, we find that the jury was instructed that it was the duty of plaintiff's intestate, before attempting to cross the track, to look and listen for approaching cars from either direction, and that if they found that plaintiff's intestate did not look and listen "that ends the case." Manifestly, if the court should have directed a verdict for defendant upon the ground that the undisputed testimony showed that plaintiff's intestate was guilty of contributory negligence, it was error to submit to the jury the question whether he was guilty of contributory negligence. If the undisputed testimony did not warrant such an instruction, then the court was not in error in submitting the question to the jury The argument in the brief is, upon this subject, addressed wholly to the proposition that the undisputed evidence

showed that plaintiff's intestate could and would have seen the approaching car if he had looked for it; that he did not look or listen; in this respect his conduct was negligent, and forbade a recovery. This question is raised by the second and the one hundred forty-first and the one hundred forty-second assignments of error; it is not raised by the others to which the brief refers. Beyond this, the seventy-ninth and eightieth assignments of error raise other distinct questions. The second subdivision of the brief is headed: "Negligence. Failure to Sound Whistle"—and it is said that under this head defendant relies upon assignments of error numbered 8, 9, 10, 11, 12, 14, 42, 71, 81, 89, 90, 91, 92, 110, 114. An examination of these assignments discovers that they are not directed to the same, but often to wholly dissimilar, propositions. The question raised appears to be that defendant owed no duty to sound the whistle at public or at private crossings, or *arguendo*, anywhere, unless to apprise some one actually in danger of the approach of the car. But the forty-second assignment of error is—

"Based upon the refusal to give the forty-second request to charge, which was:

"'I instruct you that there is no competent evidence in this case that the whistle on the defendant's car was not blown just prior to the time of the accident, and, on the other hand, there is positive proof that the whistle was blown just prior to the accident; and I instruct you that; in so far as the blowing of the whistle is concerned, no negligence has been shown for which the defendant is liable.'"

Sufficient has been said to show the wholly useless and laborious task imposed upon the court by the failure of counsel to state in the brief, as the rules require, distinct from argument, the errors on which appellant relies, the questions involved, and the manner in which they are raised. The fault is not an uncommon one; but this is a flagrant, as well as wholly inexcusable, breach of the rule. The court regrets the necessity for thus directing attention to a source of much unnecessary labor and possible con-

fusion. It must be evident that counsel who have tried a cause at *nisi prius*, which they seek to review in this court, can, and should, address themselves in this court at once, and with precision, to the errors actually relied upon, and to the reasons for believing that error was committed at the trial. There can be no excuse for presenting to the trial court, in a case like the one before us, 71 distinct requests to charge, and none for assigning error upon the refusal to give each of them.

Beginning at page 334 and ending at page 373 of the record is matter which purports to be what was said in argument to the jury by the attorneys for plaintiff, interspersed with objections, colloquies of counsel, and, perhaps, some rulings by the court. The purpose of incorporating this in the record is not disclosed.

Plaintiff, the widow of deceased and administratrix of his estate, recovered against defendant a verdict and judgment for $1,477.92 for damages for the negligent killing of her intestate. There was a motion for a directed verdict for defendant; no motion for a new trial. Defendant's railroad is operated by electric power, and, so far as the fact is here important, it owns its right of way. According to its schedule, its cars pass over the line each half hour; there being two regular north-bound and two regular south-bound cars. Plaintiff's intestate was struck and killed by a north-bound car June 18, 1910, upon a private, or farm, crossing on his own farm, through which the road is laid. The time was about 7:45 p. m. Some of the witnesses say the time was about 8:20, local time.

We discuss, first, the question whether a verdict should have been directed for defendant, upon the ground that plaintiff's intestate was guilty of contributory negligence, as matter of law. If he was negligent, it was because he did not look or listen for an approaching car before going upon the track. The farm house upon the land is upon the east side of a highway running nearly north and south. The barn and other outbuildings are on the west side of this highway. The defendant's right of way and track are on

the west side of the highway and cross the barnyard. To reach the barn and outbuildings, it was necessary to cross the railroad track. The crossing is planked; there is a board fence across the right of way north and south of the crossing; and there are cattle guards at each end of the crossing. A gate opens into the barnyard from the west end of the right of way. Fourteen rods south of this private crossing, a highway is crossed by the railroad tracks. From the private crossing to the south, the railroad runs straight, or nearly so, for a mile or more. On the day in question, plaintiff's intestate had supper shortly after 6 o'clock, local time, and he and the witness Miller had then gone over to the barn. It was in returning to, or towards, the house that plaintiff's intestate was killed. The car was running very fast; its speed being estimated by witnesses at from 50 to 70 miles an hour. Two persons saw the collision, the plaintiff's witness Miller and the motorman in charge of the car. The witness Miller testified that he was two or three steps east of the gate, which was closed, and 25 or 30 feet from the track, when he saw plaintiff's intestate, who was ahead of him, on the track between the rails, and that he appeared to be taking the step which would carry him east of the rails, when the car struck him. He (Miller) was in a position where he could see the car, and did see it—the whole of it—coming when it was at or about at the highway crossing 14 rods away. He further testified that, looking down the track to the south, a car could be seen for about a mile, but could not be seen for a mile from the barnyard. He does not state whether plaintiff's intestate did or did not pay any attention to the car, or look to see if a car was coming; he does testify that he first noticed him when he was on the track.

The motorman testified that when he first saw plaintiff's intestate he was on the west side of the track, about to step on the track. He was looking to the east directly across the tracks. The car was then about 60 feet from him. He blew the whistle, put the air into emergency, reversed the car. Plaintiff's intestate jumped to the east

as the whistle sounded, and did not at any time look towards the car. There is further undisputed testimony tending to prove that a person as tall as was plaintiff's intestate could, by looking down the track, see a car approaching from the south for a distance of a mile or more. But testimony was produced tending to prove that it was dark, or nearly dark, when the collision occurred, and that no headlight, or other light, was displayed upon the front end of the car; that no whistle was sounded for the said private crossing; that no person saw the deceased at or just before the instant when he passed upon the track. The witness Miller says the interior of the car was lighted and the headlight was not lighted. It is obvious that, if it was so dark that the approaching car could not be seen for any considerable distance, the fact that it could be seen for a long distance in the daytime is not necessarily decisive of the question of the due care of deceased. The position from which the witness Miller saw the car was not the position occupied by the deceased; and the fact that Miller saw the lighted car, and the deceased did not see it, is a fact not necessarily decisive of the question of the due care of the deceased. Negligence of deceased, as matter of law, cannot be found from the testimony of the motorman. It was not error to submit the question to the jury, unless, as appears to be contended by counsel for defendant, it was the duty of the deceased to, in any event, keep out of the way of defendant's cars. This contention will be noticed later on.

The subject next presented in the brief is that of defendant's negligence, and the argument is limited, as to the facts, to the alleged failure to sound a whistle or gong. Testimony for plaintiff tended to prove that no whistle or other signal was sounded at the highway crossing, and that signals had customarily been given at that place. Testimony for defendant tended to prove that the car was equipped with a heavy whistle, and that when it was approaching, and while it was south of the highway cross-

ing, two long and two short blasts were given. The jury was instructed:

"The defendant company had a right, in the exercise of due care and in accordance with law, to run its cars over its tracks at such speed as they choose. If you find from a preponderance of the evidence that there was a lighted headlight on this car, and if a whistle was sounded a quarter of a mile or less before reaching the Wavle public crossing, then plaintiff cannot recover, because there was no negligence on the part of the defendant company."

Defendant presented the following requests:

"(8) I instruct you that under the evidence in this case the defendant is not guilty of any negligence, in so far as the blowing of the whistle or sounding of the gong is concerned.

"(9) I instruct you that under the evidence in this case the defendant was not in duty bound to give any signal for the private crossing where the plaintiff's intestate was struck and killed.

"(10) I instruct you that under the evidence in this case the defendant owed no duty to the plaintiff's decedent, at the private crossing, to give a signal at the public crossing immediately south of the private crossing in question.

"(11) I instruct you that under the evidence in this case the defendant owned the private right of way over which its cars are operated by the defendant company, without condition, at the point where the accident in question occurred, and that the plaintiff's decedent had a mere license to cross said private right of way over the premises of this defendant, subject to the operating of cars by the defendant as a common carrier.

"(12) I instruct you that under the evidence in this case the defendant had a warranty deed, placing the fee to the right of way over which its cars are operated in the defendant company, without condition, at the point where the accident in question occurred, and that the plaintiff's decedent had a mere license to cross said private right of way over the premises of this defendant, subject to the operating of the cars by the defendant as a public carrier; and I further instruct you that it was the duty of plaintiff's decedent, Charles Wavle, in crossing the track under said license, to keep out of the way of the cars operated by this defendant."

None of these were given.

The statute does not impose upon defendant the positive duty to give signals at highway or other crossings. It is nevertheless bound to operate its cars with reference to known conditions.  For example, it would be a reckless act if it ran a car over its road in the night, at a high rate of speed, displaying no light and giving no signals. It is wholly impracticable and unreasonable to require the cars to be brought under complete control every time a highway or private crossing is reached.  Somewhere lies the course of reasonable prudence, marked out generally by experience, and variable as peculiar and unusual conditions are presented.  Defendant's cars are equipped with headlights, and customarily these are lighted at night. They are equipped with whistles, and these are blown, customarily, at public crossings.  The whistle is not customarily blown at private or farm crossings.  We find no reason for saying that the method of operation indicated is not generally prudent.  The cases are few in which courts have held, or have refused to hold, that the rules generally applicable to the operation of cars upon a steam railroad are also applicable to the operation of cars upon an electric interurban railroad, upon a private right of way.  The danger of travel is much the same upon either kind of road, so far as passengers are concerned, and is quite the same to those going upon the tracks.

The duty of one traveling upon the highway to look and listen before attempting to cross the tracks of an interurban railroad was declared, with references to numerous cases in which steam railroads were parties, in *Folkmire* v. *Railways Co.*, 157 Mich. 159 (121 N. W. 811). Recognizing this duty of the traveler are the cases of *Snow* v. *Railway Co.* (Ind. App.), 93 N. E. 1089; *Mann* v. *Stock Yard Co.*, 128 Ind. 138 (26 N. E. 819); *Cincinnati, etc., R. Co.* v. *Lohe, Adm'r*, 68 Ohio St. 101 (67 N. E. 161, 67 L. R. A. 637); *Robinson* v. *Railway*, 99 Me. 47 (58 Atl. 57); *Phillips* v. *Railway Co.*, 104 Md. 455 (65 Atl. 422, 10 Am. & Eng. Ann. Cas. 334); *Cable* v. *Railroad Co.*, 50 Wash. 619 (97 Pac. 744, 23 L. R. A.

[N. S.] 1224).  See note to *Pilmer* v. *Traction Co.*, 15 L. R. A. (N. S.) 254.

In the operation of steam railroads, the whistle is not usually sounded upon the approach of a train to a private or farm crossing; and a failure to sound it is not usually regarded as evidence of negligence.  We see no reason for holding that the duty is greater when an electric interurban car is operated through the country, and the approach of the car to the crossing can be seen by those using the crossing.

But whether the failure to sound a whistle at the public crossing, if there was such failure, violated any duty owed to the plaintiff's intestate, upon his farm with its private crossing, is a question we think must be answered in the negative.  Whether the whistle was in fact sounded at the public crossing was material, as affecting the question of contributory negligence, because the public crossing was so near the private crossing.  In other words, it would have been competent for defendant to prove, if it could, that the whistle was sounded so near to the private crossing as to inform those using it, or about to do so, that a car was approaching.  It does not follow that a failure to sound the whistle at the highway crossing would be a breach of any duty which defendant owed to plaintiff's intestate at his private crossing, on his farm, even if it were true that the custom of whistling at the highway was known to those living in the vicinity thereof.

It has been held by this court that the failure of a railroad company to perform the positive statutory duty to sound the whistle at a highway crossing may be the foundation of an action against the company by one who had knowledge that the law required the whistle to be blown, and who relied upon the performance of the duty, although the injury complained about was received at a private crossing in the vicinity.  *Sanborn* v. *Railroad Co.*, 91 Mich. 538 (52 N. W. 153, 16 L. R. A. 119), and cases cited in the opinion.  In this case it was said in the majority opinion:

"It is contended on behalf of the defendant that the omission of this duty cannot support an action on behalf of one who was not injured at the crossing; and there are not wanting cases which sustain this contention, under statutes somewhat similar to the one under consideration. We do not, however, think that this is the proper construction to be placed upon this statute. The statute imposes a positive duty upon the railroad company to sound its whistle and to ring its bell at a certain point. It is a well-known fact that not only those about to cross the railroad track, but those in the immediate vicinity, lawfully there, are frequently induced to rely upon the performance of this statutory duty. If they do so, and without fault of their own suffer an injury, we see no reason why the statute should not be so construed as to protect them. We think the true construction to be that, while a failure to give a signal required by law will not avail a trespasser in an attempt to charge the road, one lawfully in a position where such negligent omission may constitute the direct and proximate cause of the injury to him is entitled to aver such negligent act as the basis of the action."

In other jurisdictions, the question has been presented and the decisions, not harmonious, have been rested upon the construction given the particular statute and the evident legislative intent expressed therein. Some phases of the subject are discussed, and references are made to numerous authorities, in the case of *Lepard* v. *Railroad Co.*, 166 Mich. 373 (130 N. W. 668). In the absence of a statute, the duty of defendant to sound a whistle before propelling a car over a public highway, assuming there is such a duty, arises out of the fact that it is about to cross the highway, at speed, of which fact others, having equal right to use the highway, and desiring to do so, should in prudence be warned. It is the relation of the owners of the car to the highway and its use, and to the passengers on the car, which creates and defines the duty. Outside of those relations, it owes no duty to signify an intention to cross a highway. Failure to perform the duty is negligence as matter of law only when injury results therefrom to some one to whom the duty is owing.

We are of opinion, therefore, that the court, upon the pleadings and testimony in this case, should have given defendant's ninth and tenth requests to charge, and that the question of defendant's negligence should have been made to depend upon whether, *first*, it was so dark that a headlight on the car ought to have been burning (the car not being easily discernible by reason of the darkness); and, *second*, whether a headlight, or other sufficient light, was burning when the collision occurred.

Some criticism, which we think is not warranted, is made of the use in the charge of the term "preponderance of the evidence."

Defendant offered to prove that on previous occasions plaintiff's intestate had paid no attention to the car or to signals given, when his conduct had been discovered by the motorman; that he was careless in crossing the track ahead of cars; that shortly before the collision he was spoken to by one of the defendant's employés respecting his carelessness, and about a particular instance of it, with a warning. The testimony was excluded. It is said that it was competent as affecting the question of contributory negligence. No authority is cited. Whether such testimony should have been admitted to rebut a presumption that plaintiff's intestate looked and listened before going upon the track, if no one observed his conduct when he was approaching the track, is a question we prefer not to decide without argument, especially as the point may not be presented upon a new trial.

The court permitted the stenographer, who had taken the testimony at the coroner's inquest, to read from her notes, in the absence of the jury, the testimony, or some of it, so taken, for the benefit of counsel for the plaintiff. How this proceeding prejudiced the defendant is not pointed out, and is not apparent.

A special question was submitted to the jury by defendant, viz. :

" Did the fence at the private crossing of Charles Wavle

make it impossible for the plaintiff's decedent to see the car approaching from the south, while he was between the fences at said private crossing?"

Upon the undisputed testimony, the question should have been answered in the negative. The jury, having been out for some hours, reported themselves not agreed upon an answer to the question. The court thereupon withdrew it from their consideration. Whether the question was answered in the affirmative or negative, it would not be controlling of the general verdict. The court committed no error in withdrawing the special question. *Grimme* v. *Fraternal Aid Ass'n*, 167 Mich. 240 (132 N. W. 497).

It appears to be the contention of plaintiff in error that it appeared from the testimony that the deceased did not himself work his farm, but at and before the time of his death, received from a cropper, or renter, two-thirds of the proceeds of the farm, and because his widow, the administratrix, had, after his death, continued the relation with the cropper, there was no evidence of any pecuniary loss to her as a result of the death of her husband. Testimony —and there was considerable admitted—to prove damages was received over objection and exception, and the court refused to charge the jury in conformity with the theory stated, or precisely with any theory advanced for defendant. We do not think it is important to set out the testimony objected to, or the repeated requests to charge which were refused. Plaintiff's intestate, as we infer, owned 40 acres of land and leased 80 other acres. There was testimony tending to prove that he superintended the farm in a way, did chores, prepared wood for fuel, and was otherwise active about the place. He was 72 years old, and had an expectancy of life of about 7 years. Our attention has not been directed to the testimony, if there is any, showing whether the plaintiff widow is entitled to retain possession of the farm or the leased lands; and we are satisfied that the testimony received to prove damages was much of it incompetent for that purpose. The statute

aims at securing for those dependent upon the deceased indemnity for the pecuniary loss suffered by his death. It appears that plaintiff's intestate was the head of his house and manager of his affairs, and that plaintiff was supported, and might expect to be supported, by him for a time at least. That she may be able to support herself is not a fact precluding a recovery. But to the extent that what she was accustomed to receive, and might be expected to receive, from him has been lost as the result of his death, she is entitled to recover. The testimony should have been limited to such as tended to prove the accustomed contributions, the likelihood of their being continued, and the portion or value of them lost to plaintiff.

We have stated and decided what appear to be the important questions which the record presents. We overrule the contention of appellant that owners of private crossings must, at all times and under all circumstances, protect themselves from injury from defendant's cars. We hold that it is negligent to operate such cars after dark without a proper headlight, or such other lights or warnings as will enable those using such private crossings to discover the approach of a car.

The judgment is reversed, with costs to the appellant. For the purpose of taxing costs, the record will be treated as containing 350 pages.

BIRD, J., did not sit.