KUN *v.* DETROIT, JACKSON & CHICAGO RAILWAY CO.

STREET RAILWAYS — NEGLIGENCE — CONTRIBUTORY NEGLIGENCE — DIRECTED VERDICT.

> An automobile driver approaching an interurban electric railway crossing, who had an unobstructed view in the direction from which a car was coming for from 400 to 500 feet when he was 26 feet from the track, but who failed to see the car until he was struck and injured, was guilty of contributory negligence as matter of law, precluding recovery.

Error to Wayne; Webster (Arthur), J. Submitted January 12, 1927. (Docket No. 80.) Decided December 1, 1927. Rehearing denied January 19, 1928.

Case by Louis Kun against the Detroit, Jackson & Chicago Railway Company for personal and other injuries. Judgment for defendant on a directed verdict. Plaintiff brings error. Affirmed.

*Joseph Fabian,* for appellant.

*William E. Tarsney,* for appellee.

CLARK, J.    This is a street car crossing accident case brought by plaintiff to recover damages from defendant interurban electric railway company for injuries received when struck by one of its east-bound express cars while crossing its track in the village of Inkster, a suburb of Detroit. The accident occurred about 3 o'clock in the afternoon of April 30, 1923, where defendant's track crosses Inkster road. At this place the car track is approximately in the middle of Michigan avenue, which is paved to a width of about 60 feet for some distance each side of its intersection with Inkster road. East of the crossing in

Street Railroads, 36 Cyc. p. 1627; L. R. A. 1917C, 695.

question the wide pavement extends about 100 feet and then narrows to less than 20 feet, all of which is south of the car track. Westward the wide portion of pavement is about 300 feet long, narrows and continues on the north side of the car track which curves somewhat to the southward. Just south of Michigan avenue there is a depression in the land which makes on Inkster road a corresponding rise leading up to Michigan avenue. One and two-story buildings on the south side of Michigan avenue at each corner prevent a clear view of the traffic on Michigan avenue being had until the south edge of the pavement is reached. The south edge of the pavement is 26 feet from the south rail of the single car track in the middle of Michigan avenue.

At the time of the accident plaintiff was 38 years of age, with good health and eyesight. He was employed as a laborer at the Ford Motor Company's River Rouge blast furnace plant. That afternoon he took his "boss and his wife" in his "big seven-passenger" touring car which he had driven for two years and went out to the village of Inkster to look up some lots they had purchased. In the course of their journey they had occasion to travel north on Inkster road, unpaved at that time, from a place south of Michigan avenue across that much traveled thoroughfare.

With reference to his progress upon approaching and crossing Michigan avenue plaintiff testified, on cross-examination, in part as follows:

"*Q.* And then you must have stopped your car when 26 feet away from the first rail?

"*A.* * * * It must be so. I looked twice to the west.

"*Q.* And the first time that you looked was when your machine was brought to a stop, but the house was in the way?

"*A.* Yes, and after that I went up farther and I looked both ways.

"*Q.* And the second time you stopped your machine was when you were this six feet beyond the curb line so that you could see by the parked automobiles?

"*A.* Yes.    And then it was that I made up my mind that I could go across and I started up.    *    *    *

"*Q.* Now, in which one of these speeds did you have your gear when the automobile was standing still?

"*A.* In none of them.    I took it out.

"*Q.* Well, into which one then did you throw your lever or gear shift?

"*A.* In the first.    That I did when I assured myself that I were safe in going across.    And once I had my automobile under headway, I kept right on going straight across; when I heard the notice I shifted into the second.

"*Q.* And from the time that you started your automobile from its standing position until the time that you heard the notice, you kept looking right straight ahead?

"*A.* Yes, I was looking both ways.

"*Q.* When?

"*A.* When I started off I kept looking both ways. Then when the noise came that I shifted into the second, I got hit.    *    *    *    Before I started I looked both ways, then I looked ahead.    *    *    *

"*Q.* Well, when you were in the act of shifting your gears did you look west at all?

"*A.* No, sir.    I was shifting and I looked at the east and by that time my car got on the track and I got hit.    *    *    *

"*Q.* Did you see the street car at all?

"*A.* I seen him when he hit me.

"*Q.* You never saw it before it hit you?

"*A.* No.

"*Q.* And after you got beyond the point where these automobiles stood along the side of the curb, when you were 26 feet away from the car tracks, right out in Michigan avenue, there wasn't anything to obstruct your view, was there?

"*A.* No.

"*Q.* Not a thing?

"*A.* I didn't see anything dangerous there.

"*Q.* And at any time were you going faster than five miles an hour?

"*A.* I don't know how many miles I was going, I was going very slow. * * *

"*Q.* And going very slowly as you were on this occasion, you could stop your car instantly?

"*A.* Yes, but then by that time I had my front wheels on the car tracks. * * * When I was midway between my former standing position and the car tracks, if I had looked to the west I maybe would have seen the car. Going at this slow speed, with brakes, both emergency and foot brakes working, I could stop within this distance.

"*Q.* And the reason you did not stop because you did not see the car?

"*A.* That is why."

Samuel D. Lapham, a Dearborn real estate man, testified he saw the accident while he was driving an automobile "about 100 feet east of the accident." Qualified as a witness as to the speed of the express car, he further testified:

"I offered my opinion at the time, I thought around about 40 miles an hour. * * * It drove the automobile about 15 feet east and north of the track. Throwed the occupants out and the automobile aside. I took one of the injured men, and the plaintiff to the hospital."

The testimony was undisputed that a person at the curb line on the south side of Michigan avenue, 26 feet from the car track, would have an unobstructed view to the west of 400 or 500 feet.

The alleged grounds of negligence on the part of defendant are failure to equip its car with proper brakes, failure to give required signals and dangerous rate of speed. Defendant pleaded the general issue. At the close of plaintiff's testimony defendant's counsel moved for a directed verdict, the gist of his argument being summarized as follows:

"His (plaintiff's) failure to exercise his faculties or see the car coming, coupled with his failure to use the mechanism of his automobile to stop when a car must have been coming, because it hit him, is contributory negligence on his part which bars recovery."

This motion was granted. Plaintiff moved for a new trial which was denied. He seeks review and reversal by writ of error.

The trial judge in charging the jury carefully reviewed the testimony and from it pointed out that, under well-settled rules of law, as applied to plaintiff's own testimony, considered in its most favorable light, he not only failed to bear the burden of proof in establishing his freedom from negligence, but affirmatively showed himself guilty of such contributory negligence as precluded recovery, particularly referring to *Baader* v. *Railway Co.*, 228 Mich. 104, which covers the controlling feature in this case as follows:

"If he did not see the train it was because he did not look, and if he did not look at this point, where his vision was not restricted, he was guilty of negligence. If he did look and saw it approaching so near the crossing, he was guilty of contributory negligence in driving upon the track."

In this case plaintiff's own testimony shows that he had an unobstructed view in the direction from which the car was coming for from 400 to 500 feet when he was 26 feet from the track. He testifies that he did not see the car until it struck him. This question has been so often reviewed by this court that it would be superfluous to traverse it again. The case not only falls within the *Baader Case* but numerous other decisions rendered before and since then, among the most recent of which are *Manos* v. *Railway*, 168 Mich. 155; *Colborne* v. *Railway*, 177 Mich. 139; *Molby* v. *Railway*, 221 Mich. 419; *Pamburn* v. *Railroad Co.*, 228 Mich. 472; *Molda* v. *Clark*, 236 Mich. 277, and numerous cases which they cite.

The judgment will stand affirmed.

SHARPE, C. J., and BIRD, FELLOWS, WIEST, and MCDONALD, JJ., concurred.

The late Justice SNOW and Justice STEERE took no part in this decision.