BEASLEY v GRAND TRUNK WESTERN RAILROAD COMPANY

Docket No. 77-2225. Submitted January 17, 1979, at Detroit.—Decided June 6, 1979.

Jimmy R. Beasley was killed and Eva M. Williams was injured when an automobile driven by Beasley was struck by a train at a point where the driveway/road from the Williams residence crossed the tracks of defendant Grand Trunk Western Railroad Company. The administrator of the estate of Jimmy Beasley brought a wrongful death action and plaintiff Eva M. Williams brought an action for damages for her injuries against defendant railroad, alleging negligence on the part of defendant in failing *inter alia,* to maintain a safe crossing, failing to give adequate warning of the approach of the train and failing to maintain a clear view of the railroad tracks at the crossing.

At trial there was conflicting evidence as to whether the train sounded its whistle at the time in question, there being testimony that defendant's trains had sounded whistles at that crossing on prior occasions. There was conflicting evidence as to the degree of visual obstruction at that crossing, and evidence that personnel of defendant had cleared away brush on prior occasions. Defendant moved for directed verdicts as to both plaintiffs. The Genesee Circuit Court, Donald R. Freeman, J., granted defendant's motion for directed verdict with respect to plaintiff Beasley, but denied the motion with respect to plaintiff Williams. Over an objection by plaintiffs' attorney, defendant was permitted to admit into evidence photographs of the scene of the accident. Defendant was also permitted to call and question decedent's doctor with respect to decedent's alleged hearing loss.

While the trial court instructed the jury that defendant was required to use ordinary and due care in the operation of its

REFERENCES FOR POINTS IN HEADNOTES

[1] 65 Am Jur 2d, Railroads § 524.

[2, 4] 65 Am Jur 2d, Railroads §§ 448, 483, 534.

[3] 65 Am Jur 2d, Railroads §§ 91-100, 504.

[5] 29 Am Jur 2d, Evidence §§ 793, 794.

[6] 81 Am Jur 2d, Witnesses § 256.

railroad, the court charged the jury that defendant was not required to take the same precautions at a private crossing that it took at a public crossing, the court previously having ruled that the crossing in question was a private crossing. The court further charged the jury that defendant had no duty to erect warning signs at the crossing, repair or maintain the road as it approached the crossing or sound a whistle as the train approached the crossing, and specifically charged the jury that defendant could not be found negligent for failure to take any of these safeguards.

The jury returned a verdict of no cause of action with respect to plaintiff Williams, defendant's motion for a directed verdict with respect to plaintiff Beasley having previously been granted by the court. Both plaintiffs appeal. *Held:*

1. Contributory negligence as a matter of law can no longer be premised upon the mere failure to "stop, look and listen" at a railroad crossing. The proper standard is whether the automobile was operated in a manner in which a reasonably prudent person would act in the same or similar circumstances.

2. It was error to grant the directed verdict in favor of defendant railroad with respect to plaintiff Beasley where there was conflicting evidence with respect to whether the train sounded its whistle and/or whether the view of the train was obstructed. Questions of fact for the jury were thereby created so as to make removal from the jury of those questions improper under the circumstances.

3. A railroad crossing is a private rather than public crossing where the crossing involves a driveway which has not been used or worked upon by public authorities. The permissive use of the driveway by the general public does not change the nature of the driveway or the crossing.

4. It was error to charge the jury that defendant railroad was not negligent in failing to sound a whistle and to refuse to give plaintiff's proposed instruction that the jury could consider whether defendant should have maintained a clear view at the crossing. Although the railroad had no statutory duty, there was evidence from which the jury could have found that the railroad had a duty, or assumed the duty, to sound a whistle and/or to maintain an unobstructed view, and that the railroad had breached those duties.

5. The staged photograph of the accident scene was properly admitted into evidence, since the photographer identified where and how the photographs were taken and testified that they fairly and accurately represented the scene of the accident,

there being no allegation that the photographs were inaccurate representations.

6. It was error to permit questioning of decedent's doctor relative to decedent's hearing loss where knowledge of the hearing loss was acquired by the doctor as a result of a physical examination of the decedent required for admission of the decedent to college. Information acquired at such a physical examination is within the scope of the statutory physician-patient privilege.

Reversed and remanded.

1. Negligence — Contributory Negligence — Railroads — Automobiles — Railroad Crossings — Standard of Conduct.

Contributory negligence as a matter of law in the operation of an automobile at a railroad crossing can no longer be premised upon the mere failure to "stop, look and listen" at the crossing; the proper standard is whether the automobile was operated in a manner in which a reasonably prudent person would act in the same or similar circumstances.

2. Negligence — Directed Verdict — Railroads — Railroad Crossings — Questions of Fact.

A directed verdict in favor of a defendant railroad in a negligence action arising out of an automobile-train collision was erroneous where there was conflicting evidence with respect to whether the train sounded its whistle and/or whether the view of an oncoming train was obstructed at the railroad crossing; questions of fact for the jury were created.

3. Railroads — Railroad Crossings — Driveways.

A railroad crossing is a private crossing rather than a public crossing where the railroad crosses a driveway/road which has not been used or worked upon by public authorities, notwithstanding that there may have been a permissive use of the driveway/road by the general public.

4. Negligence — Railroads — Private Railroad Crossings — Jury Instructions — Standard of Care — Reversible Error.

A charge to a jury that a railroad was not negligent when its locomotive failed to sound a whistle as it approached a railroad crossing, and the failure to charge, as requested, that the jury could consider whether defendant should have maintained a clear view at the crossing, was error where, although the railroad had no statutory duty, there is evidence from which the jury could have found that the railroad had a duty, or assumed the duty, to sound the whistle and to maintain an

unobstructed view at the crossing and that the railroad had breached those duties.

5. EVIDENCE — PHOTOGRAPHS — STAGED PHOTOGRAPHS — ADMISSION.

A staged photograph of an accident scene was properly admitted into evidence where the photographer identified where and how the photographs were taken and testified that the photographs fairly and accurately represented the scene of the accident and where there were no allegations that the photographs were inaccurate representations.

6. EVIDENCE — PHYSICIANS AND SURGEONS — PHYSICIAN-PATIENT PRIVILEGE — STATUTES.

Questioning of the doctor of a plaintiff's decedent at a trial for negligence relative to the decedent's hearing loss was improperly allowed because such information is within the scope of the statutory physician-patient privilege where knowledge of the hearing loss was acquired by the doctor as a result of a physical examination of the decedent required for admission of the decedent to college.

*Glotta, Adelman, Dinges, Davis, Middleton, Riley & Murphy, P.C.,* for plaintiff.

*Dennis W. Krakow,* for defendant.

Before: D. C. RILEY, P.J., and J. H. GILLIS and MacKENZIE, JJ.

D. C. RILEY, P.J. The facts in this automobile-train collision case are as follows:

On January 10, 1973, decedent, Jimmy Ray Beasley, Eva Mae Williams, and Wanda K. Catt, were visiting at plaintiff Williams' home in Montrose Township, Genesee County. At approximately 3:30 p.m., the parties entered into decedent's 1964 Chevrolet and left the Williams' premises. In doing so, it was necessary to travel over what plaintiffs characterize and argue is a public road and defendant a private driveway. This road/driveway is the only means of entering and exiting the Williams' property. It is approximately 12 feet wide and

unpaved. At its western end, it terminates in an oval-shaped pattern by the Williams' home. At its eastern end, it stops where it intersects Orchard Street, which is a regularly maintained and paved street. Just west of and parallel to Orchard Street are railroad tracks owned and maintained by defendant, Grand Trunk Western Railroad Company.

As decedent and his companions were proceeding toward Orchard Street, one of defendant's trains was proceeding south along the railroad tracks. When the train was about 200 feet north of the intersection, decedent's car pulled onto the tracks and apparently came to a complete stop. The train, travelling at about 30 miles per hour, was unable to stop within the distance remaining. A collision occurred, with the ensuing wreckage carried some 450 feet from point of impact. Jimmy Ray Beasley, the driver of the vehicle, was killed, and the other two passengers seriously injured.

In October, 1973, Raymond Beasley, administrator of the estate of the decedent, Jimmy Ray Beasley, filed this wrongful death action against defendant, alleging negligence. In February, 1974, Raymond Beasley died and Oleta Beasley, mother of the decedent, was appointed successor administratrix and substituted as a party plaintiff. Plaintiff Eva Williams brings this action on her own behalf for injuries she sustained in the accident. Plaintiffs' complaint alleges that defendant was negligent, *inter alia,* in that it failed to: (1) maintain a safe crossing and guard it with reasonable care, (2) give adequate warning of the approach of the train, and (3) maintain a clear view for crossing the railroad tracks. It was plaintiffs' theory that the vehicle and train arrived simultaneously and that Jimmy Ray Beasley, due to a lack of clear view, the absence of a train signal or whistle,

and the icy and rutty condition of the road, found himself in a position of inextricable danger.

Defendant alleges that any injury plaintiffs may have sustained was due solely to, or at least was caused in part by, the negligence of the decedent, particularly decedent's failure to drive his vehicle at a speed reasonable and proper under the circumstances, heed defendant's train whistle and bell, make a proper observation for defendant's train, and, thereby, yield the right-of-way.

At the close of plaintiffs' proofs, defendant moved for a directed verdict as to both plaintiffs. The motion was denied as to Eva Mae Williams. The court reserved its ruling as to the estate of Jimmy Ray Beasley, subsequently granting the motion following defendant's case-in-chief.

The jury returned a verdict of no cause of action by plaintiff Williams. Both plaintiffs appeal as of right and raise a plethora of issues. We reverse as to both plaintiffs. The issues unnecessary to our present disposition, yet likely to reoccur upon retrial, are considered *seriatim* in conjunction with those we deem controlling.

I. *Did the lower court err when it granted defendant's motion for a directed verdict upon finding that the decedent Jimmy Ray Beasley was guilty of contributory negligence as a matter of law?*

In granting the defendant's motion for a directed verdict at the close of the proofs, the lower court found that decedent had crossed the tracks several times on the day of the accident and that he knew the condition of the road and what precautions would be necessary for his safety. The court refused to consider the argument of plaintiffs' counsel that, because trees and shrubs were in the immediate vicinity of the railroad tracks,

the decedent's automobile would have been only three or four feet from the tracks before decedent would have been in a position to view any oncoming train. The court rejected also plaintiffs' contention that the jury could reasonably infer from these circumstances that decedent would not have the requisite reaction time and stopping distance to avoid the accident after becoming aware of an oncoming train. The trial judge held that, because there was no direct testimony concerning these questions, they could not be inferred from the evidence presented at trial.

At one time, Michigan courts applied the "stop, look and listen" rule in railroad-automobile and automobile-pedestrian negligence cases. Under this rule, automobile drivers were guilty of contributory negligence as a matter of law if, when approaching a railroad track, they had not driven their automobiles very slowly or had not stopped and looked prior to crossing the railroad track. See *Kun v Detroit, J & C R Co,* 240 Mich 598, 602; 216 NW 380 (1927), *Baader v Detroit, J & C R Co,* 228 Mich 104, 105-106; 199 NW 630 (1924). See also *Hett v Duffy,* 346 Mich 456, 459-460; 78 NW2d 284 (1956) (holding pedestrians guilty of contributory negligence in the absence of proof showing they had stopped and looked for oncoming traffic prior to crossing the street).

In *McKinney v Yelavich,* 352 Mich 687, 697-698; 90 NW2d 883 (1958), the Michigan Supreme Court criticized this rule and expressly abandoned it, stating that the proper standard for negligence was not some artificial rule like "stop, look and listen", but, rather was that of a reasonably prudent person acting under the same or similar circumstances. Thus, in the opinion of the Court:

"* * * [T]he question is not what the pedestrian

could have seen, as a matter of physical fact, but what he should have seen in the exercise of due care."

The Court also considered the danger of crystallizing a general standard of conduct into unbending rules of law:

"We must guard against confusing general standards of care *(e.g.,* the actions of a reasonably prudent man under the same or similar circumstances) with particular rules of conduct, sometimes called *'specific'* standards (stop, look and listen; always watch the traffic light; keep observing the approaching side-road driver, et cetera). Conduct which is the epitome of care in some specific situations, under those specific circumstances, may be the essence of recklessness in others. It depends upon the balance of the circumstances." (Emphasis in original.) *Id.,* at 699.

Although an automobile-pedestrian case, the *McKinney* rationale was (and is) equally applicable to collisions at railroad crossings:

"The attainment, or lack of attainment, of the standard of due care can be predicated only upon the existence of certain facts.

"For example, under some circumstances a jury may be permitted to find, under proper instructions, that a failure to 'stop, look and listen' before crossing a railroad track amounted to a failure to exercise due care under the circumstances. If this finding is permitted to petrify into a hard and fast 'rule' *(i.e.,* it is negligence *per se* to fail to stop, look and listen under all circumstances before crossing a railroad track), absurd and unjust results will inevitably follow." *Id.,* at 692.

To these comments we add that directed verdicts, particularly in negligence actions, are viewed with disfavor. *Cody v Marcel Electric Co,* 71 Mich App 714, 717; 248 NW2d 663 (1976), *lv den* 399 Mich 851 (1977). In considering a motion for directed verdict, the trial court is bound to

view the evidence in a light most favorable to the nonmovant. *Armstrong v LeBlanc,* 395 Mich 526, 532; 236 NW2d 419 (1975), *Johnson v Grand Trunk W R Co,* 58 Mich App 708, 713; 228 NW2d 795 (1975). If, when viewed in this light, the facts are such that reasonable persons could honestly come to different conclusions, then the question is for the jury. *Johnson, supra,* at 713. In *Kujawski v Cohen,* 56 Mich App 533, 535; 224 NW2d 908 (1974), *lv den* 394 Mich 772 (1975), we stated that a directed verdict would be improper where there was any evidence competent and sufficient to support a jury verdict for the nonmovant party:

> "The right to have a jury pass on questions of fact must be protected even when only 'scant' evidence is presented. *McKinch v Dixon,* 391 Mich 282; 215 NW2d 689 (1974)."

Bearing these points in mind, we then turn to the question of decedent's due care and the evidence presented in its support. In this regard, the following two questions became pertinent at trial: did defendant's train sound a whistle to warn of its approach to the crossing and was decedent's view of the railroad track so obstructed that he could not have seen the approach of the train?

Five witnesses testified on behalf of defendant that they, in fact, heard a train whistle. Six witnesses asserted that they heard no whistle nor any other advance warning prior to the accident. However, mere testimony that a sound was not heard, by itself, does not present an issue of fact as to whether or not the sound existed. *Williams v Grand Trunk W R Co,* 344 Mich 84, 88; 73 NW2d 455 (1955). Such "negative evidence" must be preceded by a showing that the witness had been in a position to hear the sound if it occurred. *Dalton v*

*Grand Trunk W R Co,* 350 Mich 479, 485-486; 87
NW2d 145 (1957). In the case at bar, at least one
witness, whose house was situated immediately
beside the railroad tracks, testified that he was
"positive" the train did not sound its whistle.
However, the strongest indication that the sound-
ing of the whistle was a question of fact came from
the lower court, which, in denying the motion for
directed verdict as to plaintiff Eva Mae Williams,
ruled:

> "*I am going to allow that to be a factual issue, as to
> whether it was rung,* whether there was an obligation,
> whether there was due care; all of these factors I think
> are properly argueable *[sic]* before a jury, and I'm going
> to deny the motion." (Emphasis supplied.)

As to whether decedent's view of any oncoming
train was obstructed, the following pertinent evi-
dence was adduced at trial. According to a land
surveyor, trees and bushes were growing within
ten feet of the railroad track. The distance be-
tween decedent's front bumper to the place where
he sat as driver was approximately seven feet.
Therefore, it was possible for decedent to have
been within about three feet from the railroad
tracks before he had an unobstructed view of any
oncoming train. The driveway/road upon which
the decedent was traveling was a rutty gravel one
that became icy in bad weather. The only witness
testifying as to the speed of the decedent's automo-
bile was Thomas Soper, an employee of defendant
who was working as a fireman on the train in-
volved in the accident. He estimated the speed of
the decedent's automobile to be at a "good walking
speed". Considering this evidence in a light most
favorable to the plaintiff, one cannot say that
reasonable men could not disagree on the question

of whether decedent was contributorily negligent. Contrary to the position of the trial court, the fact that the decedent necessarily had a certain reaction time to the danger and required a certain stopping distance is one that can be legitimately inferred from the evidence. In *McClure v Dukes,* 61 Mich App 339, 342; 232 NW2d 704 (1975), *lv den* 394 Mich 844 (1975), the Court stated that reasonable and legitimate inferences from the evidence must be considered when ruling on a motion for directed verdict. See also *Michigan Mutual Liability Co v Staal Buick, Inc,* 41 Mich App 625; 200 NW2d 726 (1972), *MacKay v Island of Bob-Lo Co,* 39 Mich App 64; 197 NW2d 151 (1972).

In sum, the evidence presented by plaintiff estate of Beasley at trial, when considered in a light most favorable to that plaintiff, would have permitted the jury to find that the decedent acted with due care, *i.e.,* that the train did not signal its coming and give the decedent advance warning and that the decedent's view of the oncoming train was so obstructed by the bushes and trees near the railroad tracks that he could not have extricated himself from the situation in time to avoid the accident. Therefore, the lower court's directed verdict for defendant was erroneous.

II. *Did the lower court err when it found that, as a matter of law, the railroad crossing in question was a private, and not a public crossing?*

The significance of this issue lies in the instructions of the trial court to the jury that the defendant railroad was not required to take the same safeguards or adhere to the same standard of conduct at a private crossing as it would at a public crossing.

In Michigan, railroads (and highway authorities) are required by statute to undertake certain pre-

cautions at railroad crossings for the care and protection of the public (*i.e.,* erection of warning signs, repair and maintenance of a safe crossing, stationing of guards or watchmen, sounding of a whistle, etc.). See MCL 466.1 *et seq.;* MSA 22.260 *et seq.,* MCL 469.1 *et seq.;* MSA 22.761 *et seq.* These statutory duties are mandated only at intersections involving public highways. Despite plaintiffs' attempt to so characterize the crossing in question, it is evident that it does not fit the definition of "public highway" as that term is used by the Legislature. MCL 221.20; MSA 9.21 defines a public highway as:

"All highways regularly established in pursuance of existing laws, all roads that shall have been used as such for 10 years or more, whether any record or other proof exists that they were ever established as highways or not, and all roads which have been or which may hereafter be laid out and not recorded, and which shall have been used 8 years or more, shall be deemed public highways, subject to be altered or discontinued according to the provisions of this act."

In *Comstock v Wheelock,* 63 Mich App 195, 198-199; 234 NW2d 448 (1975), cited by plaintiffs, this Court reviewed the elements necessary to qualify under the statute:

"The elements of the cause of action are these: there must be a *defined line used and worked upon by public authorities,* traveled by the public for 10 consecutive years without interruption and [it must] be public, open, notorious and exclusive." (Emphasis supplied.)[1]

---

[1] For purposes of the Michigan Vehicle Code, MCL 257.20; MSA 9.1820 defines a "highway or street" as:

"[T]he entire width between the boundary lines of every way *publicly maintained* when any part thereof is open to the use of the public for purposes of vehicular travel." (Emphasis supplied.)

See also, *Pearl v Torch Lake Twp,* 71 Mich App 298, 305-307; 248 NW2d 242 (1976), *lv den* 399 Mich 844 (1977), *St Ignace v McFarlane,* 45 Mich App 81, 84-85; 206 NW2d 226 (1973). Of the testimony adduced at trial, plaintiffs offered insufficient proofs to show that the driveway/road was "used and worked upon" by public authorities. Plaintiffs' claim that this requirement was satisfied because of periodic house checks by the Montrose police is without merit; in addition, their assertion that Mr. Williams was gratuitously acting in place of the public authorities when he, on an intermittent basis, would repair that portion of the way east of the railroad tracks is equally untenable. Although there was testimony to indicate that children, teenagers and adults would cross the area in question to enter an orchard area which included a swimming pool, and that it was also sometimes used by snowmobilers, it is axiomatic that permissive use of an otherwise private road by the general public, however long, will not make it a public highway. *Leelanau County Board of Road Comm'rs v Bunek,* 344 Mich 605, 613; 75 NW2d 51 (1956), *Maghielse v Crawford County Road Comm,* 47 Mich App 96, 98; 209 NW2d 330 (1973), *lv den* 390 Mich 796 (1973), *Village of Bellaire v Pankop,* 37 Mich App 50, 55; 194 NW2d 379 (1971), *lv den* 386 Mich 786 (1972). We hold, therefore, that the lower court properly held that the crossing in the present case was a private one.

III. *Did the lower court correctly instruct the jury with respect to the present status of the law in Michigan regarding a railroad's duty at a private railroad crossing?*

In its charge to the jury, the lower court instructed that the defendant was required to use ordinary and due care in the operation of its

railroad. In addition, the jury was advised that the defendant was not required to take the same precautions at a private crossing that it was at a public one. From this premise the court further charged that the defendant had no duty to erect warning signs at the crossing, repair and maintain the road as it approached the tracks, station guards or watchmen, or sound a whistle when one of its trains approached the intersection. The trial judge specifically informed the jury that they could not find the defendant negligent for failure to take any of these safeguards.

We agree with plaintiffs' assertion that the court failed to sufficiently distinguish between the statutory and common-law duties which may have been imposed upon the defendant at the crossing in question and, for this reason, hold that, under the facts of this case, it erroneously misled the jury by its instructions that a railroad is not required to take the same precautions at a private crossing that it is at a public one, and that defendant could not be held negligent for failure to give an advance warning.[2]

The trial judge relied on *Thomas v New York C R Co,* 267 Mich 396, 399; 255 NW 214 (1934), a "stop, look and listen" case, to support his statement of the law:

"The duties of persons approaching a railroad track to stop, look and listen are recognized. Plaintiff, however, contends there was no safe place in which his decedent could have stopped before reaching the tracks and she was under no legal obligation to stop on or between the tracks. *Nichols v Railway Co.,* 203 Mich. 372 [168 NW 1046 (1978)]. In that case the accident was

---

[2] We find no merit in plaintiffs' other claims of instructional error, in part due to the lack of evidence presented at trial, and in part by reason of considerations of proximate causation.

at a crossing of a highway, where more cautious handling of trains may be anticipated than at private road crossings."

However, *Thomas* was decided within the boundaries of a driver's contributory negligence. Read in this context, it seems clear that what a driver may reasonably expect to anticipate and what the railroad's duty of due care is under the circumstances at the same crossing may be two dissimilar considerations. But, *Thomas* does not suggest that a railroad may exercise less care at a private crossing than is reasonably required.

A jury charge that less care is required at a private crossing, as opposed to a public one, may or may not be true under the specific facts of a given case. Above all, the question of what precautions should be taken in the exercise of due care under all the circumstances is one for the jury. *McKinney v Yelavich, supra,* at 691-692. In this regard, the decision in *Bauman v Grand Trunk W R Co,* 376 Mich 675, 684, 687-688; 138 NW2d (1965) is instructive. There the question was whether defendant had a common-law duty, under all the circumstances, to provide crossing protection over and above those duties already required of it by statute. The trial judge instructed that if the jury did not find "special circumstances" regarding the nature of the intersection as a country or business crossing, they could not find the railroad negligent for the omission of safeguards other than those mandated by the Legislature. The Supreme Court reversed and stated that:

"[B]y his quoted instruction the trial judge effectively took from the jury its exclusive right to determine whether, in light of all the facts and circumstances surrounding this business district grade crossing, rea-

sonable prudence required the railroad to maintain
devices warning motorists of its approaching trains in
addition to the wooden crossbuck sign required by law
and present at the crossing.

\*    \*    \*

"We know of no case where the common-law duty of
railroads as to crossing protection is, as a matter of law,
solely dependent upon whether the crossing is in a
business or residence district or in the open country.
Certainly, facts and circumstances will vary between
crossings in a business or residence district as they will
vary in the open country. Thus, unless no reasonable
minds can disagree, it remains a jury question, in view
of all the facts and circumstances, whether crossing
protection, in addition to that provided by statute, is
reasonably required. The quest remains constant. Thus
while we found in *Baldinger [v Ann Arbor R Co,* 372
Mich 685; 127 NW2d 837 (1964)], *supra,* that plaintiff's
view was not so obstructed that she could not see
defendant's train approaching an open country crossing,
we drew no distinction between an unobstructed cross-
ing in open country and an unobstructed crossing in a
city, nor was a distinction otherwise drawn between
country and city crossings in *Emery [v Chesapeake &
O R Co,* 372 Mich 663; 127 NW2d 826 (1964)], a city
crossing case. Neither in *Barnum [v Grand Trunk W R
Co,* 148 Mich 370; 111 NW 1036 (1907)], *supra,* a city
crossing case, nor in any other of the principal cases
cited, is there any suggestion that the variable common-
law duty, which depends upon all relevant factual
circumstances, is altered one whit merely by the fact
that the crossing is in a residence or business district or
in open country. There being no support for it in either
reason or authority, we are constrained to hold that the
charge as given constituted reversible error." (Footnote
omitted.)

There can be no quarrel with the conclusion
that, since the crossing here was private, defen-
dant was relieved of its statutory duties. This
would not, however, eradicate those duties depen-
dent upon the facts which may be imposed by

application of common-law negligence. The omission of a statutory duty to sound a whistle (due to the absence of a highway) does not mean there might not be a common-law duty to do so if the surrounding circumstances would mandate such a precaution.

Defendant alleges that it was not required to give an advance signal at the crossing in question, citing *Burt v Detroit, G H & M R Co,* 262 Mich 204; 247 NW 157 (1933), and *Wavle v Michigan U R Co,* 170 Mich 81; 135 NW 914 (1912). In *Burt* it was held that:

"As the path across the tracks was not a public crossing, the statute (2 Comp. Laws 1929, § 11181), requiring signals for public crossings, is not applicable. *Lepard v Railroad Co.,* 166 Mich. 373 [130 NW 668 (1911)] (40 L.R.A. [N.S.] 1105); note: 66 A.L.R. 819." 262 Mich at 207.

The Court did not address the question whether there still may be a common-law duty to signal, but merely held that application of the statute was unwarranted. *Wavle, supra,* at 90-91, opined that:

"The duty of one traveling upon the highway to look and listen before attempting to cross the tracks of an interurban railroad was declared, with references to numerous cases in which steam railroads were parties.

\* \* \*

"In the operation of steam railroads, the whistle is not usually sounded upon the approach of a train to a private or farm crossing; and a failure to sound it is not usually regarded as evidence of negligence. We see no reason for holding that the duty is greater when an electric interurban car is operated through the country, and the approach of the car to the crossing can be seen by those using the crossing."

As is readily apparent, the cited language was fashioned in the context of the now discredited rule of "stop, look and listen". Moreover, the Court did not state that the failure to sound a whistle at a private crossing is never evidence of negligence, but left open the possibility that certain circumstances may make it prudent to do so.

In the case at bar, various witnesses in the neighborhood testified that defendant's trains would often blow their whistles before reaching the crossing. In addition, Thomas Soper, the fireman on defendant's train on the day of the fatal mishap, indicated that, at least on the trains in which he was riding, the practice was to always sound the whistle 1/4 mile prior to reaching the crossing where the accident took place. In view of such evidence, there is no doubt that a jury question was created whether, separate from any statutory mandate, defendant had a duty (or assumed a duty) to give an advanced signal on the day in question. By instructing the jury that defendant was under a duty to exercise reasonable care, but could not be found negligent for failing to sound its whistle, the court effectively removed from their consideration the facts and circumstances surrounding an alleged negligent act and, in doing so, invaded the jury's province.

We also hold that the lower court erred in refusing to give plaintiffs' proposed instruction that the jury could consider whether defendant was negligent in failing to sound an advance whistle or siren before reaching the crossing. In addition, the trial judge erroneously failed to charge the jury, as requested by plaintiffs, that they could consider whether defendant should have maintained a clear view for motorists in the northwest quadrant of the crossing in question. The evidence

presented at trial as to the extent of view obstruction as one approached the crossing from the Williams' premises was conflicting. Significantly, the transcript reveals testimony that, for the first two or three years after the Williams' move to Montrose Township, personnel for the railroad would, from time to time, come out and clear away the brush. Thus, it would have been proper for the jury to consider, in deciding if defendant transgressed its duty to maintain a safe crossing, whether it assumed a duty (and perhaps breached its duty) to maintain a clear view. Under the particular facts of this case, this question also was properly one for the jury. *Richman v City of Berkley,* 84 Mich App 258, 264; 269 NW2d 555 (1978), *AAMCO Automatic Transmissions, Inc v Motor Trans, Inc,* 45 Mich App 539, 543; 207 NW2d 156 (1973), *lv den* 389 Mich 817 (1973), *Nowicki v Suddeth,* 7 Mich App 503, 511; 152 NW2d 33 (1967).

IV. *Did the trial court abuse its discretion when it admitted into evidence certain photographs offered by defendant?*

At trial defendant offered into evidence photographs purporting to represent the scene of the accident, which photos included an oncoming train. The photographer identified the pictures as to when and how they were taken. He further testified that they fairly and accurately represented the scene of the accident. Plaintiffs' attorney objected to their admission into evidence on the grounds that plaintiffs themselves lacked opportunity to take any photos.

Contrary to plaintiffs' contention on appeal, staged or posed photographs are admissible at trial if they reasonably represent the scene of the accident. *Kaminski v Wayne County Road Comm'rs,*

370 Mich 389; 121 NW2d 830 (1963). See also *Dennis v Jakeway,* 53 Mich App 68, 73; 218 NW2d 389 (1974), *lv den* 392 Mich 801 (1974), *Birkhill v Todd,* 20 Mich App 356, 363-364; 174 NW2d 56 (1969). In light of the photographer's foundational testimony and counsel's failure to allege that the photos were inaccurate representations, the trial judge properly ruled the photographs admissible.

V. *Did the trial court abuse its discretion when it permitted defendant to offer into evidence the testimony of decedent's physician with respect to a condition of impaired hearing suffered by decedent?*

In order to refute decedent's mother's testimony that she was unaware of any hearing loss Jimmy Ray Beasley may have suffered, defendant brought decedent's family physician to the stand. He asserted that, in connection with a physical examination, decedent had indicated on a form that he was being treated at a Veterans Administration hospital for a 50 percent loss of hearing in his left ear. Although the doctor could not state whether he was told of this fact directly, records indicated that the relevant information was communicated to, and recorded by, someone in the office.

MCL 600.2157; MSA 27A.2157 provides in pertinent part:

"No person duly authorized to practice medicine or surgery shall be allowed to disclose any information which he may have acquired in attending any patient in his professional character, and which information was necessary to enable him to prescribe for such patient as a physician, or to do any act for him as a surgeon."

A physician-patient privilege was unrecognized by the common law; this statute, therefore, con-

trols the scope of the privilege in Michigan. *Eberle v Savon Food Stores, Inc,* 30 Mich App 496, 500; 186 NW2d 837 (1971). The purpose of the statute is clearly to protect the confidential nature of the physician-patient relationship. *Gaertner v Michigan,* 385 Mich 49, 53; 187 NW2d 429 (1971). The privilege belongs to the patient and can only be waived by him. *Gaertner, supra, Storrs v Scougale,* 48 Mich 387; 12 NW 502 (1882).

Defendant argues on appeal that the doctor's testimony was admissible as it was used to impeach the assertions of the decedent's mother. However, this contention has been previously rejected by our Court. *Cartwright v Maccabees Mutual Life Ins Co,* 65 Mich App 670, 679; 238 NW2d 368 (1975), *rev'd on other grounds* 398 Mich 238; 247 NW2d 298 (1976), *People v Bland,* 52 Mich App 649; 218 NW2d 56 (1974).

A review of the record indicates that Jimmy Ray Beasley had seen his doctor in order to obtain a physical examination required for admittance into college. The doctor had never before treated him for hearing problems. Thus, the question becomes whether the information received by the doctor and used by him for completing the college entrance form was "information * * * necessary to enable him to prescribe for such patient as a physician, or to do any act for him as a surgeon". We answer in the affirmative.

Conceding that the witness never treated the decedent for any problem related to a loss of hearing, the fact remains that decedent was required to have a physical exam in order to attend college, and only a physician could give him that examination. The information at issue was necessary to effect a fruitful and complete examination. By requesting that his physician transmit to the

university the results, the decedent waived, at least to the university, his right of confidentiality. Nevertheless, decedent did not thereby relinquish the right to control the introduction of those results into evidence at trial. In *Briesenmeister v Supreme Lodge Knights of Pythias of the World,* 81 Mich 525, 535; 45 NW 977 (1890), the Supreme Court, in construing a nearly identical statute,[3] recognized the dual nature of the privilege conferred:

"Privilege includes both the security against publication, and the right to control the introduction in evidence, of such information or knowledge communicated to or possessed by the physician. The latter right exists although the former has ceased to be of any benefit. The public may know; but shall the jury be permitted to receive and weigh testimony derived from a source which the law has put the seal of silence upon, unless released by the party who alone has the right to say whether that particular witness shall be the medium of conveying such knowledge to the jury? For instance, the party may have disclosed to a third person all that he has to his physician. Now, while his admissions may be proved in a proper manner by such third person, they cannot be proved by the physician against the objection of the party."

See also *Polish Roman Catholic Union of America v Palen,* 302 Mich 557; 5 NW2d 463 (1942) (repudiating the theory that once confidential information has been published, the privilege of objecting to its repetition has been waived), *Cartwright v Maccabees Mutual Life Ins Co, supra* (holding that the signing of a waiver of the physician-patient privi-

---

[3] "No person duly authorized to practice physic or surgery, shall be allowed to disclose any information which he may have acquired in attending any patient, in his professional character, and which information was necessary to enable him to prescribe for such patient as a physician, or to do any act for him as a surgeon." How Stat (1882) § 7516.

lege when applying for a life insurance policy, would not, subsequently, waive the privilege at trial.)

Defendant reads the statute too literally when it maintains that the information must be used in "treating" the patient. If, for example, a patient sees a physician for a yearly physical and the physician finds the patient in good health, *i.e.,* needing no "treatment", the health information received by the doctor would not be outside the privilege merely because the patient has no ailment requiring attention.

In sum, we are of the opinion that the information as to decedent's hearing loss received by his physician was within the scope of the physician-patient privilege and was, therefore, improperly admitted into evidence.

Reversed and remanded. No costs, neither party having prevailed in full.